*State of Maryland v. Adnan Syed*, No. 24, September Term, 2018.  Opinion by Greene, J.

**CRIMINAL LAW—POST CONVICTION—INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL—FAILURE OF TRIAL COUNSEL TO INTERVIEW POTENTIAL ALIBI WITNESS—*STRICKLAND V. WASHINGTON***

The Court of Appeals held that under the deficient performance prong of *Strickland v. Washington*, 466 U.S. 668 (1984), at a minimum, Respondent's trial counsel had a duty to contact a potential alibi witness to investigate or explore that person's background and potential as an alibi.  The failure of Respondent's trial counsel to contact an alibi witness identified by Respondent constituted deficient performance under the first prong of the *Strickland* test.  The second prong of the *Strickland* test asks whether trial counsel's deficient performance resulted in prejudice.  The Court of Appeals held that given the totality of the evidence against Respondent, there was not a significant or substantial possibility that the jury would have reached a different verdict had his trial counsel presented the alibi witness.

**CRIMINAL LAW—POST CONVICTION—INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL—APPLICATION OF WAIVER PRINCIPLES**

The Court of Appeals held that an individual who advanced a claim of ineffective assistance of counsel in his post-conviction petition, filed pursuant to the Uniform Postconviction Procedure Act, but failed to assert all grounds upon which that claim is made, cannot later assert other grounds upon which the ineffective assistance of counsel claim could have been premised.  Thus, the Court held that the waiver provision of the Uniform Post-Conviction Procedure Act, Criminal Procedure Article, § 7-106(a), applied in this case to bar an allegation upon which the ineffective assistance of counsel claim could have been argued but was not, because the Respondent's ineffective assistance of counsel claims had already been fully litigated.

Circuit Court for Baltimore City
Case No. 199103042 through 199103046
Argued: November 29, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 24

September Term, 2018

_____

STATE OF MARYLAND

v.

ADNAN SYED

_____

Barbera, C.J.
Greene
McDonald
Watts
Hotten
Getty
Adkins, Sally D., (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by Greene, J.
Watts, J. concurs.
Barbera, C.J., Hotten and Adkins, JJ.,
concur and dissent.

_____

Filed: March 8, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In the present case, we are asked to reconsider the decision of a post-conviction court that granted the Respondent, Adnan Syed, a new trial. That decision was affirmed in part and reversed in part by our intermediate appellate court with the ultimate disposition—a new trial—remaining in place. The case now stands before us, twenty years after the murder of the victim, seventeen-year-old high school senior Hae Min Lee ("Ms. Lee"). We review the legal correctness of the decision of the post-conviction court and decide whether certain actions on the part of Respondent's trial counsel violated Respondent's right to the effective assistance of counsel.

## FACTUAL AND PROCEDURAL BACKGROUND

We shall not endeavor to replicate the thorough, carefully-written and well-organized Opinion, penned by then-Chief Judge Patrick Woodward, of the Court of Special Appeals in this case. For a more exhaustive review of the underlying facts, evidence presented at trial, and subsequent procedural events involving Respondent's (hereinafter "Respondent" or "Mr. Syed") conviction of first-degree murder of his ex-girlfriend, we direct readers to the Opinion of that court. *Syed v. State*, 236 Md. App. 183, 181 A.3d 860 (2018) ("*Syed*"). For purposes of our review of the issues before us, we shall include relevant facts as necessary as well as an abbreviated recitation of the significant procedural markers in this case's sojourn.

On February 25, 2000, a jury sitting in the Circuit Court for Baltimore City convicted Mr. Syed of first-degree murder, robbery, kidnapping, and false imprisonment of Ms. Lee. Mr. Syed challenged his conviction on direct appeal. In an unreported opinion, the Court of Special Appeals affirmed his conviction on March 19, 2003. *Syed v. State*,

No. 923, Sept. Term 2000. On May 28, 2010, Mr. Syed filed a petition for post-conviction relief, which he supplemented on June 27, 2010. In that petition, Mr. Syed alleged that he received ineffective assistance of counsel and in so alleging lodged claims against his trial counsel, sentencing counsel, and appellate counsel. In the post-conviction petition, Mr. Syed argued nine bases for his claim that he had received ineffective assistance of counsel. *Syed*, 236 Md. App. at 206-07, 181 A.3d at 872-73 (listing the nine bases on which Mr. Syed claimed his trial counsel or appellate counsel were ineffective). Of relevance to our inquiry is that none of the nine bases was a claim that his trial counsel failed to challenge an alleged *Brady*[1] violation regarding the admission of evidence that potentially undermined the reliability of cell tower location evidence that was used as part of the State's case.[2] Mr. Syed did raise and argue that his trial counsel was ineffective for failing to investigate or call Asia McClain ("Ms. McClain") as an alibi witness. After a two-day

---

[1] When evidence that is favorable to an accused is not disclosed or is suppressed by the State, the result—colloquially referred to as a *Brady* violation— is considered a denial of due process. *See Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963).

[2] By way of comparison, in his Motion to Re-Open Post-Conviction Proceedings, which he filed upon remand to the Circuit Court by the Court of Special Appeals, Mr. Syed presented two related questions regarding the cell tower location evidence. As the Court of Special Appeals characterized, one of the issues presented in his motion was "[w]hether the State withheld potentially exculpatory evidence related to the reliability of cell tower location evidence in violation of the disclosure requirements under *Brady*." *Syed v. State*, 236 Md. App. 183, 208-09, 181 A.3d 860, 874 (2018). The second issue presented was whether "trial counsel's alleged failure to challenge the reliability of the cell tower location evidence violated [Mr. Syed's] Sixth Amendment right to effective assistance of counsel." *Id.* at 209.

hearing on October 11, 2012 and October 25, 2012, the post-conviction court issued an order and memorandum in which it denied post-conviction relief on January 6, 2014.

Thereafter, Mr. Syed filed a timely application for leave to appeal, which presented the issue of his trial counsel's failure to interview or investigate Ms. McClain as a potential alibi witness.[3] Subsequent to his filing of an application for leave to appeal, Mr. Syed supplemented his application for leave to appeal and requested that the Court of Special Appeals remand the case for the post-conviction court to consider an affidavit from Ms. McClain.[4] The intermediate appellate court granted Mr. Syed's request and issued a limited remand order in which it afforded Mr. Syed "the opportunity to file such a request to re-open the post-conviction proceedings" in the Circuit Court. *See Syed*, 236 Md. App. at 210, 181 A.3d at 875 (reciting the Remand Order in relevant part).

Upon remand by the Court of Special Appeals and as part of his request to the Circuit Court to reopen his post-conviction proceedings, Mr. Syed filed a request for the

---

[3] Additionally, Mr. Syed requested that the Court of Special Appeals review whether his trial counsel rendered ineffective assistance of counsel when she failed to pursue a plea offer on his behalf.

[4] The affidavit, dated January 13, 2015, repeated Ms. McClain's recollection of seeing and talking with Mr. Syed at the Woodlawn Public Library at approximately 2:30 p.m. on January 13, 1999, the day of Ms. Lee's murder. The affidavit explained that no one from Mr. Syed's defense team contacted her even though she would have been willing to tell her story. Ms. McClain affirmed that she completed an affidavit on March 25, 2000 and that she did so without pressure from Mr. Syed's family. Ms. McClain also affirmed that after a conversation with one of the prosecutors involved with Mr. Syed's case, Ms. McClain was persuaded to cease further involvement with Mr. Syed's defense team. Finally, the affidavit indicates that after an interview with a reporter from National Public Radio in January 2014, Ms. McClain felt compelled to provide an affidavit to Mr. Syed's lawyer and appear in court, if necessary.

Circuit Court to consider, for the first time, a new basis for his claim of ineffective assistance of counsel related to a purported *Brady* violation concerning the cell tower location evidence. Mr. Syed continued to maintain his argument that his trial counsel's failure to pursue Ms. McClain as an alibi witness amounted to ineffective assistance of counsel. The Circuit Court granted Mr. Syed's request to reopen his post-conviction proceedings to review both of the aforementioned issues.

After a five-day hearing, the post-conviction court issued an order, accompanied by a thorough memorandum, in which it denied relief to Mr. Syed on the issue of his counsel's failure to investigate Ms. McClain as an alibi witness. The post-conviction court concluded that although Mr. Syed's trial counsel was deficient for not contacting Ms. McClain, counsel's failure to investigate Ms. McClain's claim did not prejudice Mr. Syed. Next, the post-conviction court concluded that Mr. Syed waived his claim of a *Brady* violation with respect to the cell tower location evidence because he had not raised the claim in his post-conviction petition. Finally, with respect to Mr. Syed's claim of ineffective assistance of counsel concerning his trial counsel's failure to challenge the cell tower location evidence, the post-conviction court first determined that Mr. Syed did not knowingly and intelligently waive this claim. Then, the post-conviction court reasoned that Mr. Syed's trial counsel's failure to challenge the cell tower information was in fact deficient and that this deficiency prejudiced Mr. Syed. As a result, the post-conviction court vacated the convictions and granted Mr. Syed a new trial.

In its review of the post-conviction court's order, the Court of Special Appeals reversed the rulings in two respects. With regard to the claim that Mr. Syed suffered

ineffective assistance of counsel due to his trial counsel's failure to investigate a potential alibi witness, the Court of Special Appeals applied the tenets of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), and concluded that Mr. Syed's trial counsel's performance was deficient and that this deficiency resulted in prejudice. Specifically, the intermediate appellate court determined that Mr. Syed was prejudiced by the absence of Ms. McClain's testimony because of the State's timeline of the murder and the fact that the State was required to prove that Mr. Syed caused the death of the victim in order to secure a conviction for first-degree murder. 236 Md. App. at 281, 181 A.3d at 916. The court explained that, "the State had to establish that [Mr.] Syed 'caused the death' of [Ms. Lee], and the State's theory of when, where, and how [Mr.] Syed caused [Ms. Lee's] death was critical to proving this element of the crime." *Id*. The court characterized the State's case as a circumstantial one that "did not directly establish that [Mr.] Syed caused [Ms. Lee's] death sometime between 2:15 p.m. and 2:35 p.m. in the Best Buy Parking lot on January 13, 1999." *Id*. at 282, 181 A.3d at 916. By contrast, according to the intermediate appellate court, Ms. McClain's testimony would have been evidence that could have supplied "'reasonable doubt' in at least one juror's mind leading to a different outcome[.]" *Id*. at 284, 181 A.3d at 918. The Court of Special Appeals, thus, determined that Mr. Syed was entitled to a new trial.[5] *Id*. at 286, 181 A.3d at 919.

---

[5] One member of the panel dissented and filed a separate opinion. That member would have affirmed the post-conviction court's determination that Mr. Syed failed to meet his burden with respect his claim of ineffective assistance of counsel, and, thus, would have denied Mr. Syed's request for a new trial. *Syed*, 236 Md. App. 183, 306, 181 A.3d 860, 931 (2018) (Graeff, J., dissenting).

In addition, the Court of Special Appeals considered whether Mr. Syed had waived his right to a claim of ineffective assistance of counsel on the basis that his trial counsel failed to challenge the cell tower location evidence. *Id*. at 230, 181 A.3d at 886. Heeding the collective guidance of the reasoning in *Curtis v. State*,[6] *Wyche v. State*,[7] and *Arrington v. State*,[8] the intermediate appellate court ruled that because Mr. Syed had previously raised the issue of ineffective assistance of counsel in his petition for post-conviction relief, he was precluded from raising the issue again on a totally different ground, namely, the cell tower location ground. *Id*. at 237, 181 A.3d at 890. Specifically, the intermediate appellate court explained that Mr. Syed's post-conviction petition, "advanced seven claims that trial counsel's representation[9] was constitutionally inadequate, each on a separate ground. The cell tower ground was not one of those grounds. Consequently, the question of waiver regarding the failure to raise the issue of ineffective assistance of trial counsel is not present here." *Id.* at 236-37, 181 A.3d at 890. The Court of Special Appeals further held that the theory relative to the reliability of the cell tower location evidence was a non-fundamental right, and, as such, Mr. Syed's failure to assert this ground in his post-conviction petition constituted a waiver. *Id.* at 239, 181 A.3d at 892. In short, because Mr. Syed could have raised his ineffective assistance of counsel claim on the basis of the cell tower location

---

[6] 284 Md. 132, 395 A.2d 464 (1978).
[7] 53 Md. App. 403, 454 A.2d 378 (1983).
[8] 411 Md. 524, 983 A.2d 1071 (2009).
[9] Mr. Syed advanced nine claims in all in his post-conviction petition, including seven claims related to trial counsel, one claim related to appellate counsel, and one claim related to sentencing counsel.

evidence in his post-conviction petition and did not, he waived the claim by failing to do so.[10]  *Id*. at 240, 181 A.3d at 892.

Upon the issuance of the Opinion of the Court of Special Appeals, the State filed in this Court a petition for writ of certiorari.  Mr. Syed filed a conditional cross-petition for writ of certiorari.  The State requested that we review

> [w]hether the Court of Special Appeals erred in holding that defense counsel pursuing an alibi strategy without speaking to one specific potential witness of uncertain significance violates the Sixth Amendment's guarantee of effective assistance of counsel.

Whereas, Mr. Syed in his conditional cross-petition requested that we review

> [w]hether the Court of Special Appeals drew itself into conflict with *Curtis v. State*, 284 Md. 132 (1978), in finding that [Mr.] Syed waived his ineffective-assistance claim based on trial counsel's failure to challenge cell-tower location data, where the claim implicated the fundamental right to effective [assistance of] counsel and was therefore subject to the statutory requirement of knowing and intelligent waiver?

We granted *certiorari* on both issues.  460 Md. 3, 188 A.3d 918 (2018).

## STANDARD OF REVIEW

Our review of a post-conviction court's findings regarding ineffective assistance of counsel is a mixed question of law and fact.  *Newton v. State*, 455 Md. 341, 351, 168 A.3d 1, 7 (2017) (citing *Harris v. State*, 303 Md. 685, 698, 496 A.2d 1074, 1080 (1985) ("[T]o determine the ultimate mixed question of law and fact, [we ask] namely, was there a

---

[10] The Court of Special Appeals also ruled on the issue of whether Mr. Syed's trial counsel was ineffective by failing to pursue a plea offer with the State.  *Syed*, 236 Md. App. 183, 241-46, 181 A.3d 860, 893-96.  The court applied the two-part *Strickland* test and held that the post-conviction court properly denied Mr. Syed relief on this claim because Mr. Syed "failed to prove that the State would have made him a plea offer if trial counsel had requested one."  *Id*. at 246, 181 A.3d at 896.

violation of a constitutional right as claimed."). The factual findings of the post-conviction court are reviewed for clear error. *Id.* The legal conclusions, however, are reviewed *de novo*. *Id.* at 351-52, 168 A.3d at 7. The appellate court exercises "its own independent analysis" as to the reasonableness, and prejudice therein, of counsel's conduct. *Oken v. State*, 343 Md. 256, 285, 681 A.2d 30, 44 (1996).

## DISCUSSION

### Trial Counsel's Failure to Investigate a Potential Alibi Witness

*Parties' Arguments*

Mr. Syed urges this Court to affirm the Court of Special Appeals's holding as to the issue of whether his trial counsel's failure to investigate a potential alibi witness was violative of *Strickland*. According to Mr. Syed, it was a dereliction of duty for trial counsel to make no effort to contact Ms. McClain. This is so because, according to Mr. Syed, trial counsel did not raise an alibi defense. Moreover, Mr. Syed argues that because Ms. McClain's alibi was offered for a precise time it was even more crucial for trial counsel to investigate her, and there is no tactical consideration that could have justified a failure to contact Ms. McClain. Finally, Mr. Syed suggests that Ms. McClain was a disinterested witness whose testimony would have "punctured both the 'when' and the 'where' of the State's core theory[,]" and, therefore, would have created reasonable doubt as to Mr. Syed's involvement to satisfy the prejudice prong of *Strickland*.

The State, of course, seeks a reversal of the Court of Special Appeals on the issue of trial counsel's efforts to investigate Ms. McClain as an alibi witness. According to the State, the record here is silent as to trial counsel's reasons or motivations for not

- 8 -

investigating Ms. McClain and, without more, Mr. Syed cannot satisfy his burden under *Strickland*. The State contends that a proper application of *Strickland* in the face of a silent, ambiguous or incomplete record as to trial counsel's reasons requires that a court deny relief based on the presumption that trial counsel acted reasonably. Here, according to the State, there were several plausible explanations for why Mr. Syed's trial counsel did not need to investigate Ms. McClain's purported alibi. Ultimately, the State concludes that Mr. Syed has failed to show that his trial counsel's performance satisfied the second prong of *Strickland* because the State presented "overwhelming evidence of [Mr. Syed's] guilt."

*Trial Counsel's Duty to Investigate*

The Sixth Amendment affords an individual accused of a crime the right to effective assistance of counsel. The Supreme Court has cautioned that "a person who happens to be a lawyer [who] is present at trial alongside the accused [] is not enough to satisfy the constitutional command." *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). When a defendant advances an ineffective assistance of counsel claim, and requests that his or her conviction be reversed, he or she must meet a two-part test to succeed on his or her claim. *Id.* at 687, 104 S. Ct. at 2064, 80 L.Ed.2d 674. This test, referred to as the *Strickland* test, guides a reviewing court's consideration of the claim of ineffective assistance of counsel. *Id.* Under the first prong, the defendant must show that his or her counsel performed deficiently. *Id.* Next, the defendant must show that he or she has suffered prejudice because of the deficient performance. *Id.* In the absence of satisfying both prongs of the test, "it cannot be said that the conviction [] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The United States Supreme Court settled on an objective standard of reasonableness for determining whether an attorney's performance was deficient. *Id.* The Supreme Court declared, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Id.* at 686, 104 S. Ct. at 2064, 80 L.Ed.2d 674. In light of that objective standard, "[j]udicial scrutiny of counsel's performance is highly deferential, and there is a strong (but rebuttable) presumption that counsel rendered reasonable assistance[.]" *In re Parris W.*, 363 Md. 717, 725, 770 A.2d 202, 207 (2001). This Court has required that a defendant, when alleging that counsel's performance was deficient, "must also show that counsel's actions were not the result of trial strategy." *Coleman v. State*, 434 Md. 320, 338, 75 A.3d 916, 927 (2013). A strategic trial decision is one that "is founded upon adequate investigation and preparation." *Id.* (quoting *State v. Borchardt*, 396 Md. 586, 604, 914 A.2d 1126, 1136 (2007)) (cleaned up).

Whether the attorney's performance was reasonable is measured by the "prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065, 80 L.Ed.2d 674. In the context of this case, we look to the American Bar Association's Standards for Criminal Justice to inform our understanding of the prevailing professional norms of a criminal defense attorney's duty to investigate a potential alibi witness. Specifically, the ABA Standards for Criminal Justice 4–4.1 provided at the time of Mr. Syed's trial, in relevant part:

Duty to Investigate

(a) Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty.

American Bar Ass'n, *ABA Standards for Criminal Justice* (3rd ed. 1993).[11]  *See also*

*Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, 80 L.Ed.2d 674 ("A fair assessment of

---

[11] The fourth edition of the ABA Standards for Criminal Justice was issued in 2015, long after trial counsel rendered representation to Mr. Syed. Standard 4–4.1 currently provides, in relevant part:

Duty to Investigate and Engage Investigators

(a) Defense counsel has a duty to investigate in all cases, and to determine whether there is a sufficient factual basis for criminal charges.
(b) The duty to investigate is not terminated by factors such as the apparent force of the prosecution's evidence, a client's alleged admissions to others of facts suggesting guilt, a client's expressed desire to plead guilty or that there should be no investigation, or statements to defense counsel supporting guilt.
(c) Defense counsel's investigative efforts should commence promptly and should explore appropriate avenues that reasonably might lead to information relevant to the merits of the matter, consequences of the criminal proceedings, and potential dispositions and penalties. Although investigation will vary depending on the circumstances, it should always be shaped by what is in the client's best interests, after consultation with the client. Defense counsel's investigation of the merits of the criminal charges should include efforts to secure relevant information in the possession of the prosecution, law enforcement authorities, and others, as well as independent investigation. Counsel's investigation should also include evaluation of the prosecution's evidence (including possible re-testing or re-evaluation of physical, forensic, and expert evidence) and consideration of inconsistencies, potential avenues of impeachment of prosecution witnesses, and other possible suspects and alternative theories that the evidence may raise.

American Bar Ass'n, *ABA Standards for Criminal Justice* (4th ed. 2015).

- 11 -

attorney performance requires . . . [a court] to evaluate the conduct from counsel's perspective at the time.").

Pertinent to our analysis is the definition of an alibi witness and the contours of an alibi defense. An alibi witness is one "whose testimony 'must tend to prove that it was impossible or highly improbable that the defendant was at the scene of the crime when it was alleged to have occurred.'" *McLennan v. State*, 418 Md. 335, 352, 14 A.3d 639, 649 (2011) (quoting *Ferguson v. State*, 488 P.2d 1032, 1039 (Alaska 1971)) (cleaned up); *see also* Maryland Rule 4-263(e)(4) ("Without the necessity of a request, the defense shall provide to the State's Attorney: [i]f the State's Attorney has designated the time, place, and date of the alleged offense, the name and . . . address of each person other than the defendant whom the defense intends to call as a witness to show that the defendant was not present at the time, place, or date designated by the State's Attorney."). When a criminal defendant asserts an alibi defense, he or she does so not as an affirmative defense but to "den[y] the claim of the prosecution that he was present at the scene of the crime at the time it was committed." *Simms v. State*, 194 Md. App. 285, 308, 4 A.3d 72, 85 (2010) (cleaned up); *see also In re Parris W.*, 363 Md. 717, 728, 770 A.2d 202, 208 (2001) ("An alibi is not an affirmative defense[.]"). An alibi defense is a defendant's claim "that he [or she] was at another place at the time when the alleged crime was committed[.]" *Simms*, 194 Md. App. at 308, 4 A.3d at 85 (internal citations omitted). Importantly, to establish an alibi that negates the defendant's criminal agency, "the [alibi] testimony must cover the whole time in which the crime . . . might have been committed." *Id.* (citing *Floyd v. State*, 205 Md. 573, 581, 109 A.2d 729, 732 (1954)).

As the Court of Special Appeals and the post-conviction court observed, an analysis of counsel's duty to investigate a potential alibi witness starts with our decision *In re Parris W.*, 363 Md. 717, 770 A.2d 202 (2000). There, it was nearly a foregone conclusion that counsel's failure to subpoena corroborating alibi witnesses for the correct trial date constituted deficient performance. *Id.* at 727, 770 A.2d at 208. ("That counsel's performance was deficient, even under the highly deferential standard of *Strickland*, seems clear."). We explained that "counsel's single, serious error . . . did not constitute the exercise of reasonable professional judgment and that such failure was not consistent with counsel's primary function of effectuating the adversarial testing process in this case." *Id.* In reaching the conclusion that counsel's deficiency prejudiced the defendant, we cited a number of cases, which we shall discuss forthwith, that held that trial counsel's failure to investigate a potential alibi witness fell short of reasonable professional standards.

For example, in *Griffin v. Warden, Maryland Correctional Adjustment Center*, the defendant provided his attorney with a list of five alibi witnesses that would have accounted for his time on the day of a robbery and shooting at a drug store. 970 F.2d 1355, 1356 (4th Cir. 1992). The attorney failed to conduct any investigation of the witnesses and failed to respond to the State's discovery requests, which included failing to provide notice of intent to rely on an alibi and the identities of the alibi witnesses. *Id.* Upon transferring the case to another attorney, Mr. Griffin's first trial attorney counseled his successor that Mr. Griffin should plead guilty. *Id.* Although the second attorney accepted the case at least five months before Mr. Griffin's trial, he failed to conduct any investigation of the alibi witnesses or confirm his predecessor's compliance with the State's discovery requests. *Id.*

- 13 -

Moreover, the attorney knew that Mr. Griffin refused to plead guilty. *Id*. A jury convicted Mr. Griffin of robbery and use of a handgun in connection with a crime of violence. *Id*.

Mr. Griffin sought relief in the state court on an ineffective assistance of counsel claim but was ultimately unsuccessful. *Id.* On a request for habeas relief, the United States Court of Appeals for the Fourth Circuit applied the *Strickland* two-prong inquiry. *Id.* at 1357-58. As to the first prong, that court determined that Mr. Griffin's trial counsel's statements, in which he admitted that he did not conduct an investigation of the alibi witnesses because he expected his client to plead, were "unambiguous admissions of unpardonable neglect." *Id*. at 1358. Given the facts in *Griffin*, counsel's performance was deficient because his lack of preparation for trial fell below the standard of "prevailing professional norms[.]" *See Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066, 80 L.Ed.2d 674; *see also Griffin*, 970 F.2d at 1357-58.

In *Grooms v. Solem*, the defendant, William Grooms, was accused of selling a stolen Native American artifact between 5:00 and 5:30 p.m. in Scenic, South Dakota on May 15, 1984. 923 F.2d 88, 89 (8th Cir. 1991). During the second of his three meetings with his appointed counsel, Mr. Grooms explained that he had an alibi. *Id*. On the morning of his trial, Mr. Grooms informed his counsel that on the day of the alleged crime, he, his wife, and a friend were in Rapid City, South Dakota, a town fifty miles away from Scenic, South Dakota. *Id*. Mr. Grooms produced for his counsel a cancelled check as well as a work order, both of which supported Mr. Grooms's alibi that he was in Rapid City, South Dakota getting his truck's transmission repaired until well into the evening hours. *Id*. The cancelled check was dated for May 15, 1984 and the work order reflected the same check

- 14 -

number as that of the cancelled check. *Id*. In subsequent proceedings, two witnesses from the repair shop testified that the repairs lasted until sometime between 7:00 p.m. and 7:30 p.m. *Id*. at 89-90. Mr. Grooms's trial counsel failed to investigate the repair shop for corroboration, failed to notify the trial court as to a possible alibi witness, and failed to request a continuance in light of his client's claims. *Id*. at 90. The Eighth Circuit advised that, "[o]nce a defendant identifies potential alibi witnesses, it is unreasonable not to make some effort to contact them to ascertain whether their testimony would aid the defense." *Id*. Accordingly, the court concluded that even accepting as true that Mr. Grooms's trial counsel learned of the alibi on the first day of trial, counsel should have taken efforts to convey to the court that an investigation of the alibi was necessary. *Id*. at 91. "Once [trial counsel] discovered the potential alibi, [] trial counsel had a duty to attempt to investigate and to argue on the record for the admission of the alibi witnesses' testimony." *Id*. The Eighth Circuit affirmed the grant of habeas relief to Mr. Grooms on the basis that his trial counsel's performance was deficient and that the deficiency prejudiced Mr. Grooms. *Id*.

In *Montgomery v. Petersen*, a defendant was charged and tried for burglary in two different jurisdictions for separate acts occurring on the same day. 846 F.2d 407, 408 (1988). In Macon County, Illinois the defendant was acquitted of burglary, whereas in Moultrie County, Illinois the defendant was convicted of burglary. *Id.* "The only difference between the evidence presented in the two trials was the testimony—presented in the Macon County trial but not in the Moultrie County trial—of a disinterested witness[,

a store clerk]."[12] *Id.* at 408-409. The State's evidence in both trials consisted of witness testimony that the defendant had spent nearly twelve hours attempting to or committing burglaries. *Id.*

In Moultrie County, the defendant moved for post-conviction relief on the basis of ineffective assistance of counsel. *Id.* at 409. At the hearing on his motion, trial counsel, who had tried both cases, admitted that he did not investigate the store clerk as a potential alibi witness due to his "inadvertence" and because he "simply didn't believe the defendant[.]" *Id.* at 410. The post-conviction court concluded that the store clerk's testimony, as that of a disinterested alibi witness, was significant. *Id.* at 411. The store clerk's testimony would have not only "greatly enhance[d] the defense['s] case if it stood alone" but it would have served to corroborate "the otherwise impeachable testimony of 12 additional alibi witnesses." *Id.* The post-conviction hearing judge determined that, "the *failure to investigate the only available disinterested alibi witness* fell below the standard of reasonably effective assistance required by *Strickland*." *Id.* (emphasis in original). The Seventh Circuit affirmed. *Id.* at 416. In doing so, the court observed that the neutral, unbiased store clerk was the linchpin for the alibi defense. *Id.* at 413-14. The testimony was particularly impactful because, without the disinterested witness testimony, the case

---

[12] The disinterested witness testified that the defendant was in Springfield buying a child's bike in the afternoon on the day of the burglaries. *Montgomery v. Petersen*, 846 F.2d 407, 409 (1988). The defendant's wife and mother-in-law used the store receipt, which contained an employee code, to locate the witness, presumably in time for the clerk to be called as a witness for the Macon County trial but not for the Moultrie County trial. *Id.* at 410.

was "a straightforward credibility choice" between twelve defense witnesses and four prosecution witnesses, all of whom had family ties to each other. *Id.* at 414.

As was consistently true in the cases cited in *In re Parris W.*, a trial attorney's failure to investigate a potential alibi witness ordinarily will fall below the standard of reasonable professional judgment because it undermines the adversarial testing process inherent in a contested case. *See Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066, 80 L.Ed.2d 674 ("In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case."). Counsel's duty is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066, 80 L.Ed.2d 674. Counsel cannot form a sound trial strategy without an "adequate investigation and preparation." *Coleman*, 434 Md. at 338, 75 A.3d at 927.

The post-conviction court's factual findings indicate that Mr. Syed's attorney had ample notice of the existence of Ms. McClain as an alibi witness. The post-conviction court found, for example, that on July 13, 1999 "[Mr. Syed] informed trial counsel's law clerk that [Ms.] McClain saw [Mr. Syed] at the Woodlawn Public Library at around 3:00 p.m. on January 13, 1999." The notes in defense counsel's file also included the notation that "[Ms. McClain] and her boyfriend saw [Mr. Syed] in [the] library." Those notes in the attorney's files did not indicate that counsel or her staff investigated Ms. McClain's statements or evaluated the two letters in which Ms. McClain offered herself as an alibi. The post-conviction court found that sometime "prior to trial" Mr. Syed gave to his attorney

two letters from Ms. McClain, one dated March 1, 1999 and the other dated March 2, 1999. In the letters, Ms. McClain claimed to have seen Mr. Syed on the afternoon of January 13, 1999 at the Woodlawn Public Library at 2:15 p.m. and offered herself as a witness to his whereabouts for part of that day.[13] Finally, the post-conviction court found that "[a]lthough trial counsel had notice of the potential alibi witness, neither she nor her staff ever contacted [Ms.] McClain."

We uphold the factual findings of the post-conviction court unless those findings are clearly erroneous. *See Newton v. State*, 455 Md. 341, 351, 168 A.3d 1, 7 (2017). Notwithstanding that principle, the parties do not dispute that Mr. Syed's counsel failed to investigate Ms. McClain as a potential alibi witness. Trial counsel's failure to investigate or inquire into whether Ms. McClain might aid Mr. Syed's defense did not meet the standard of reasonable professional judgment. Mr. Syed's trial counsel failed to even contact Ms. McClain. This lack of exploration of Ms. McClain, whom trial counsel learned of as early as July 13, 1999 and for whom trial counsel had contact information, falls short of the tenets of a criminal defense attorney's minimum duty to investigate the circumstances and facts of the case. *See* American Bar Ass'n, *ABA Standards for Criminal Justice*, 4–4.1 (3rd ed. 1993) ("Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case[.]"); *see also Rompilla v. Beard*, 545 U.S. 374, 387, 125 S. Ct. 2456, 2466, 162

---

[13] The Court of Special Appeals quoted Ms. McClain's two letters in full in its Opinion. *Syed*, 236 Md. App. at 251-55, 181 A.3d at 898-900.

L.Ed.2d. 360 (2005) ("We long have referred to these ABA Standards as guides to determining what is reasonable." (internal quotations and citations omitted)).

The Court of Special Appeals explained that, "no reasonable evaluation of the advantages or disadvantages of [Ms.] McClain's alibi testimony, as compared to an alibi defense based on [Mr.] Syed's habit or routine, could be made without first contacting [Ms.] McClain." *Syed*, 236 Md. App. at 272, 181 A.3d at 911. We agree.

At a minimum, due diligence obligated Mr. Syed's trial counsel to contact Ms. McClain in an effort to explore her potential as an alibi witness. An attorney cannot be said to be carrying out the ABA's requirement of due diligence without conducting a factual investigation of an alibi witness who claims to have knowledge of the defendant's whereabouts on the day of the crime in question. Even if Mr. Syed's trial counsel knew what facts Ms. McClain would present about seeing Mr. Syed on January 13, 1999, trial counsel should have nevertheless made a bona fide effort to investigate Ms. McClain. An investigation could have verified Ms. McClain's assertions as well as revealed whether Ms. McClain was a disinterested witness. Our conclusion does not change in spite of the "heavy measure of deference to counsel's judgments" required by *Strickland*. 466 U.S. at 687, 691, 104 S. Ct. at 2064, 2066, 80 L.Ed.2d 674. Where a defendant provides his or her counsel with information about an alibi witness, the attorney has an affirmative duty to make reasonable efforts to investigate the information that was provided. Thus, the performance of an attorney who clearly failed to effectuate her duty to investigate a potential alibi witness, or provide a reasonable explanation for not investigating the witness, would be deficient under *Strickland*.

In the present case, Mr. Syed gave trial counsel the name and address along with facts about the testimony the potential witness would offer. Mr. Syed's trial counsel had received this information and, therefore, had a duty to investigate Ms. McClain as a potential alibi witness. By all accounts, trial counsel did not conduct any inquiry of Ms. McClain. Trial counsel neither confirmed Ms. McClain's statements, nor indicated in her case file the reasons why she did not investigate Ms. McClain's background or alibi. Mr. Syed's trial counsel's task list dated September 4, 1999 indicated that one task was to "[m]ake determination regarding alibi[,]" and a hand-written "urgent" appeared next to this entry. We are mindful of *Strickland*'s wisdom that "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." 466 U.S. at 693, 104 S. Ct. at 2067, 80 L.Ed.2d 674. Documentation, though, is not an art. To the extent that an attorney documents the steps of his or her investigation is a reflection of that attorney's minimal competence and *not* a reflection of trial strategy. If trial counsel had interviewed Ms. McClain and decided that the information Ms. McClain had about Mr. Syed's whereabouts on the afternoon of January 13, 1999 was not helpful to Mr. Syed's case, a notation in the file indicating as much would have plainly defeated Mr. Syed's argument on his claim of ineffective assistance of counsel. Without some indication to the contrary, we cannot conclude that trial counsel's failure to interview a potential alibi witness was the result of a reasonable trial strategy.

We hold that trial counsel did not satisfy her duty "to make [a] reasonable investigation[] or . . . make a reasonable decision that makes a particular investigation[] unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066, 80 L.Ed.2d 674. Under the

- 20 -

circumstances, trial counsel knew in advance of trial the identity of and how to contact Ms. McClain. Trial counsel also knew the nature of her potential testimony, yet still failed to contact the witness prior to trial or make an effort to communicate with her. Moreover, trial counsel's failure to attempt to contact the witness prior to trial did not constitute a reasonable tactical or strategic decision because it was not based upon an adequate investigation of the facts. *See State v. Borchardt*, 396 Md. 586, 604, 914 A.2d 1126, 1136 (2007). Although trial counsel was not available, as a result of her death, to testify at the post-conviction proceedings to explain why she did not attempt to make a reasonable investigation of Ms. McClain's background or alibi, her case file notes were admitted into evidence during those proceedings. Her notes, however, did not explain why the investigation of Ms. McClain was unnecessary or why she failed to ascertain whether Ms. McClain's testimony would aid the defense.

Our holding is limited to the narrow question of whether trial counsel was deficient for failing to *investigate* Ms. McClain as an alibi witness. Because we conclude that counsel was deficient for failing to *investigate* Ms. McClain, we need not and do not hold that trial counsel was deficient for failing to *call* Ms. McClain as an alibi witness at trial.

The State strongly advocates that we adopt a broad bright-line rule that would never allow a defendant to prevail on the deficiency prong of the *Strickland* test in the absence of trial counsel's reasoning for his or her failure to investigate an alibi witness. According to the State, "where the record is silent—or even just incomplete or ambiguous—proper application of *Strickland*'s presumption of competence requires that a court deny relief." Applied here, the State's reasoning is grounded in the fact that Mr. Syed's trial counsel was

unable—due to her death—to explain why she did not contact Ms. McClain as part of trial preparations. Therefore, according to the State, Mr. Syed could not have met, and did not meet, the high burden that *Strickland* demands. The State would have this Court rule that whenever a record is silent as to the reasons why trial counsel failed to investigate a potential alibi witness, the defendant may never prevail on an ineffective assistance of counsel claim because a reviewing court could not declare trial counsel's performance deficient. A ruling such as this would divorce this Court from its obligation to review the totality of the circumstances of ineffective assistance claims through the lens of an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064, 80 L.Ed.2d 674 ("When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. More specific guidelines are not appropriate."). We are not persuaded that such a sweeping mandate accomplishes the goal that *Strickland* sought to achieve, namely, that of a just result.

Additionally, the State argues that any attempt by this Court to rely on cases where the record was *not* silent as to counsel's reasoning, such as *Griffin*, is a means of "turning *Strickland* on its head." We resist this siren call, as well. A silent record cannot be the sole determinant in our reasonableness assessment. Such a result would betray *Strickland*'s decree that a "court must [] determine whether, *in light of all the circumstances*, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690, 104 S. Ct. at 2066, 80 L.Ed.2d 674 (emphasis added). Whether trial counsel's omission was due to neglect, an intentional strategic decision, or

- 22 -

some other reason altogether, we hold that Mr. Syed's trial counsel's performance fell below the standard of reasonable professional judgment and was, therefore, deficient.

*Whether Trial Counsel's Deficient Performance Prejudiced Mr. Syed*

The second-prong of the *Strickland* standard requires the defendant to show prejudice. *Id.* at 687, 104 S. Ct. at 2064, 80 L.Ed.2d 674. A showing of prejudice is present where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068, 80 L.Ed.2d 674. We have explained that under this standard a defendant "must show either: (1) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; or (2) that the result of the proceeding was fundamentally unfair or unreliable." *Newton v. State*, 455 Md. 341, 355, 168 A.3d 1, 9 (2017) (quoting *Coleman v. State*, 434 Md. 320, 340, 75 A.3d 916, 928 (2013) (cleaned up)). The *Strickland* Court described a reasonable probability as "a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068, 80 L.Ed.2d 674. We have interpreted *reasonable probability* to mean "there was a substantial or significant possibility that the verdict of the trier of fact would have been affected." *Bowers v. State*, 320 Md. 416, 426, 578 A.2d 734, 739 (1990). A reviewing court's determination of prejudice to the defendant "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069, 80 L.Ed.2d. 674.

Important to the present case is the principle that even if a court has found that an attorney's performance was deficient, the court does not presume the defendant suffered prejudice as a result of the deficient performance. *See Weaver v. Massachusetts*, 582 U.S.

- 23 -

___, ___, 137 S. Ct. 1899, 1910, 198 L.Ed.2d 420 (2017) ("The prejudice showing is in most cases a necessary part of a *Strickland* claim. The reason is that a defendant has a right to effective representation, not a right to an attorney who performs his duties 'mistake-free.'") (internal citation omitted). In other words, every mistake made by trial counsel does not cause prejudice to the defendant's case. *See, e.g., St. Cloud v. Leapley*, 521 N.W.2d 118, 128 (S.D. 1994) (holding that attorney's failure to investigate the defendant's tribal court file offended reasonable professional judgment but that the failure did not prejudice the case); *see Brewer v. Hall*, 603 S.E.2d. 244, 247 (Ga. 2004) (holding that appellate counsel's failure to present the testimony of trial counsel at an evidentiary hearing was deficient but that, ultimately, trial counsel's performance was not deficient; thus, appellate counsel's performance caused no prejudice); *see also Moreland v. Robinson*, 813 F.3d 315, 329 (6th Cir. 2016) (holding that even if counsel's failure to use police reports at trial to challenge a discrepancy was deficient performance, the defendant was not prejudiced). A court's evaluation of the prejudice prong under *Strickland* asks, "whether it is 'reasonably likely' the result would have been different" if not for counsel's deficient performance. *Harrington v. Richter*, 562 U.S. 86, 111, 131 S. Ct. 707, 792, 178 L.Ed.2d 624 (2011); *see also Bowers v. State*, 320 Md. 416, 426, 578 A.2d 734, 739 (1990) (holding that the *Strickland* prejudice standard is best described as "a substantial or significant possibility that the verdict of the trier of fact would have been affected."). More succinctly, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112, 131 S. Ct. at 792, 178 L.Ed.2d 624.

Our analysis begins with the State's theory of Mr. Syed's involvement in the murder of Ms. Lee. The State focused primarily on Mr. Syed's actions on the evening of January 13, 1999. During the six-hour period from approximately 2:00 p.m. after school dismissed to approximately 8:00 p.m., the State's strongest evidence against Mr. Syed related to the period of time Mr. Syed was involved in burying Ms. Lee's body in Leakin Park and the subsequent abandonment of Ms. Lee's car. The State relied on the testimony of Jay Wilds ("Mr. Wilds") to establish that Mr. Syed buried the victim in Leakin Park at approximately 7:00 p.m. Mr. Wilds testified that Mr. Syed received two calls to his cell phone during the time that Mr. Syed was preparing the burial site for the victim's body. The State introduced Mr. Syed's cell phone records to corroborate Mr. Wilds's testimony. The cell phone records showed that Mr. Syed's cell phone received two incoming calls, one at 7:09 p.m. and one at 7:16 p.m. The State's expert testified that the cell towers where the calls were received connected with cell sites that encompassed Leakin Park, which is where Ms. Lee's body was discovered. The State also relied on the testimony of Jennifer Pusateri ("Ms. Pusateri"). Ms. Pusateri's testimony served to corroborate the fact of the incoming call at 7:09 p.m. or 7:16 p.m. as well as to place Mr. Syed and Mr. Wilds together at the time of that call. Ms. Pusateri testified that she received a message from Mr. Wilds to call him, so she tried to reach him using the number that was on her caller I.D. from his message. When she called and asked to speak with Mr. Wilds, the person who answered the phone responded that Mr. Wilds was busy and would call her back. The State proved that the number Ms. Pusateri called was the number for Mr. Syed's cell phone. About ten to fifteen

minutes after that call, according to Ms. Pusateri, she met Mr. Wilds in a parking lot where she saw Mr. Wilds get out of a car that Mr. Syed was driving.

Additionally the State presented evidence that this was a crime of premeditation and deliberation. For example, through Mr. Wilds's testimony, the State established that Mr. Syed told Mr. Wilds on January 13, 1999, hours before the murder, referring to Ms. Lee, "I'm going to kill that bitch." According to Mr. Wilds, while he and Mr. Syed were standing near the victim's car in the Best Buy parking lot, Mr. Syed showed Mr. Wilds the victim's body in the trunk and boasted, "I killed somebody with my bare hands." Also at that time, Mr. Wilds observed Mr. Syed wearing red gloves. Following this conversation, Mr. Syed directed Mr. Wilds to follow him, in Mr. Syed's car as Mr. Syed drove the victim's car, to a Park and Ride on Interstate 70. Thereafter, according to Mr. Wilds, Mr. Syed said that he needed to return to school so that he could be seen at track practice. They left the victim's car parked at the Park and Ride and drove back to Mr. Syed's school in his car.

In her discovery responses, Mr. Syed's counsel presented a theory that Mr. Syed had a routine of attending track practice after school followed by attending prayer service at his mosque. On October 4, 1999, Mr. Syed's trial counsel issued an alibi notice to the State, in which she stated:

> On January 13, 1999, Adnan Masud Syed attended Woodlawn High School for the duration of the school day. At the conclusion of the school day, the defendant remained at the high school until the beginning of his track practice.[14] After track practice, Adnan Syed went home and remained there

---

[14] The Woodlawn High School track coach testified that track practice was "every day after school, after their study hall . . . approximately 4:00 [p.m.] to 5:30 [p.m.], 6 [p.m.]."

until attending services at his mosque that evening. These witnesses will testify as to the defendant's regular attendance at school, track practice, and the Mosque; and that his absence on January 13, 1999 would have been noticed.

The notice also included the names of over eighty individuals who would testify as to Mr. Syed's routine involving track practice and the Mosque. *See* Md. Rule 4-263(e)(4) (explaining that defendant is required to furnish to the State's Attorney "the name and . . . the address of each person other than the defendant whom the defense intends to call as a witness to show that the defendant was not present at the time, place, or date designated by the State's Attorney[.]"); *see also McLennan v. State*, 418 Md. 335, 352, 14 A.3d 639, 649 (2011) (adopting the definition of alibi witness as "a witness whose testimony 'must tend to prove that it was impossible or highly improbable that the defendant was at the scene of the crime when it was alleged to have occurred.'" (quoting *Ferguson v. State*, 488 P.2d 1032, 1039 (Alaska 1971))); *see also Jackson v. State*, 22 Md. App. 257, 260, 322 A.2d 574, 576 (1974) ("Proof of an alibi, like any other defense testimony, is simply a means of controverting the State's effort to establish criminal agency."). This alibi notice to the State was consistent with the statements Mr. Syed had made to the police on prior occasions.

On the evening of January 13, 1999, Officer Scott Adcock spoke with Mr. Syed inquiring about Mr. Syed's knowledge of the whereabouts of Ms. Lee. At that time, Mr. Syed told Officer Adcock that "he was suppose[d] to get a ride home from the victim, but he got detained at school and felt that she just got tired of waiting and left." Mr. Syed did not provide Officer Adcock with an explanation of what detained him or what he did after school. Two weeks after the initial conversation with Officer Adcock, Mr. Syed was

interviewed by Detective O'Shea on January 25, 1999. At that time, Mr. Syed said that he had attended track practice after school on January 13, 1999. Detective O'Shea spoke with Mr. Syed again on February 1, 1999 to ask him if he remembered telling Officer Adcock that Ms. Lee was waiting to give him a ride after school. At that time, Mr. Syed told Detective O'Shea that "[Officer Adcock's information] was incorrect because he drives his own car to school so he wouldn't have needed a ride from her." When Mr. Syed was interviewed on February 26, 1999, he told investigators that he could not remember what he did on January 13, 1999. Although Mr. Syed offered conflicting statements to law enforcement about needing a ride after school, the conflict in those statements was not inconsistent with whether he attended track practice that day.

In his post-conviction petition, Mr. Syed relied on Ms. McClain's contention that she observed him in the Woodlawn Public Library on the afternoon of January 13, 1999. Specifically, Ms. McClain averred in her 2015 affidavit that she saw Mr. Syed between 2:30 p.m. and 2:40 p.m. and had a conversation with him at that time. In assessing Ms. McClain's value as an alibi for Mr. Syed, her letters tended to show that Mr. Syed and the victim were not together between 2:30 p.m. and 2:40 p.m. on January 13, 1999.[15] Even

---

[15] Ms. McClain has offered various times when she observed Mr. Syed at the Woodlawn Public Library. For example, in her letter to Mr. Syed dated March 1, 1999, Ms. McClain indicates that she could help account for his "unaccountable lost time (2:15 [p.m.] – 8:00 [p.m.]; Jan. 13th)." In the affidavit dated March 25, 2000, Ms. McClain avers that she had been in the library waiting for a ride at 2:20 p.m. when she saw Mr. Syed and "held a 15-20 minute conversation" with him and that she left around 2:40 p.m. In Ms. McClain's affidavit dated January 13, 2015, she alleges that she saw Mr. Syed enter the library "at around 2:30 p.m." and had a conversation with him at that time and that she "left the library around 2:40 [p.m.]". Had the jury heard Ms. McClain's alibi, her testimony could have

(continued . . . )

taking Ms. McClain's statements as true, her alibi does little more than to call into question the time that the State claimed Ms. Lee was killed and does nothing to rebut the evidence establishing Mr. Syed's motive and opportunity to kill Ms. Lee. Thus, the jury could have disbelieved that Mr. Syed killed Ms. Lee by 2:36 p.m., as the State's timeline suggested, yet still believed that Mr. Syed had the opportunity to kill Ms. Lee after 2:40 p.m. Ms. McClain's testimony, according to her affidavit, failed to account for Mr. Syed's whereabouts after 2:40 p.m. on January 13, 1999. Likewise, Mr. Syed's statements to the police fail to account for his whereabouts after 2:15 p.m. when school let out. Therefore, even if the alibi testimony had been admitted into evidence it could not have affected the outcome of the case because that evidence did not negate Mr. Syed's criminal agency.

To conclude that Mr. Syed allegedly suffered prejudice as a result of his trial counsel's deficient performance, we must determine in light of all of the evidence before the jury, that "there was a substantial or significant possibility" that the jury's verdict would

---

(. . . continued)
been more problematic than helpful to Mr. Syed's case. For example, Ms. McClain's belief about Mr. Syed's whereabouts on the afternoon of January 13, 1999 did not comport with the theory that Mr. Syed's routine was to attend track practice after school because his routine did not involve going to the Woodlawn Public Library. Also, Ms. McClain's letter dated March 1, 1999 indicated that she would "try [her] best to help [Mr. Syed] account for some of [his] unwitnessed, unaccountable lost time (2:15 – 8:00; Jan. 13th)." The jury could have concluded that Ms. McClain's statement was an offer to fabricate an alibi for Mr. Syed, thereby undermining Ms. McClain's credibility as a disinterested witness. Given this potential, we cannot say there is a substantial probability that the jury would have discounted Mr. Wilds's testimony in favor of Ms. McClain's testimony. Furthermore, Ms. McClain's testimony could have been more harmful than helpful because it would have created another inconsistency in Mr. Syed's case. Namely, Ms. McClain's testimony would have interjected facts into the case that were inconsistent with Mr. Syed's statements that he needed a ride after school.

have been affected by the deficient performance. *See Bowers*, 320 Md. at 426, 578 A.2d at 739. The Court of Special Appeals provided a thorough recounting of the evidence that the State established in its case in chief, which included a combination of witness testimony, cell phone technology evidence, and some forensic evidence. *See Syed*, 236 Md. App. at 196-06, 181 A.3d at 867-72. The State, however, "adduced no direct evidence of the exact time that [Ms. Lee] was killed, the location where she was killed, the acts of the killer immediately before and after [Ms. Lee] was strangled, and of course, the identity of the person who killed [Ms. Lee]." *Id*. at 284, 181 A.3d at 917. Whether the State's case was "a strong circumstantial case," as the Court of Special Appeals described it, or a case built upon a combination of direct and circumstantial evidence, is of no consequence under the *Strickland* analysis. *Compare Hebron v. State*, 331 Md. 219, 226, 627 A.2d 1029, 1032 (1993) ("Maryland has long held that there is no difference between direct and circumstantial evidence.") *with Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069, 80 L.Ed.2d 674 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). Our analysis considers the totality of the evidence before the jury. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069, 80 L.Ed.2d 674.

With that in mind, we highlight some of the more crucial evidence the State relied on to prove its case. Mr. Wilds testified that Mr. Syed had complained of Ms. Lee's treatment of him and said that he intended "to kill that bitch." Mr. Wilds claimed to have seen the body of Ms. Lee in the trunk of her car at the Best Buy parking lot. Ms. Pusateri, a friend of Mr. Wilds, told police, and testified at trial consistent with those statements,

that Mr. Wilds told her that Ms. Lee had been strangled. At the time Ms. Pusateri relayed this information to the police, the manner of Ms. Lee's death had not been publicly released. Mr. Syed's cell phone records showed him receiving a call in the vicinity of Leakin Park at the time that Mr. Wilds claimed he and Mr. Syed were there to bury Ms. Lee's body. Mr. Wilds directed the police to the location of Ms. Lee's abandoned vehicle, which law enforcement had been unable to find for weeks. Mr. Syed's palm print was found on the back cover of a map book that was found inside Ms. Lee's car; the map showing the location of Leakin Park had been removed from the map book. Various witnesses, including Ms. Pusateri, Nisha Tanna, and Kristina Vinson, testified to either seeing or speaking by cell phone with Mr. Wilds and Mr. Syed together at various times throughout the afternoon and evening on January 13, 1999.

Given the totality of the evidence the jury heard, we conclude that there is not a significant or substantial possibility that the verdict would have been different had trial counsel presented Ms. McClain as an alibi witness. Ms. McClain would have been an alibi witness who contradicted the defendant's own statements, which were themselves already internally inconsistent; thus Ms. McClain's proffered testimony could have further undermined Mr. Syed's credibility. Moreover, Ms. McClain's account was cabined to a narrow window of time in the *afternoon* of January 13, 1999. Her testimony would not have served to rebut the evidence the State presented relative to Mr. Syed's actions on the *evening* of January 13, 1999. At best, her testimony would have highlighted Mr. Syed's failure to account precisely for his whereabouts after school on January 13, 1999. Trial

- 31 -

counsel's deficient performance, therefore, could not have prejudiced Mr. Syed in light of the totality of the evidence presented to the jury.

Ultimately, the post-conviction court reached the same conclusion as we do here. That court viewed Ms. McClain's testimony in light of "the crux of the State's case" which "did not rest on the time of the murder." The post-conviction court reasoned that the State placed Mr. Syed in Leakin Park at approximately 7:00 p.m. on January 13, 1999 through the testimony of Mr. Wilds and the cell phone location evidence. With this theory in mind, the post-conviction court concluded that Ms. McClain's testimony "would not have been able to sever this crucial link" between Mr. Syed burying Ms. Lee's body and the State's evidence supporting that allegation. The Court of Special Appeals, however, disagreed with the post-conviction court.

The intermediate appellate court suggested that the post-conviction court failed to consider that in order to convict Mr. Syed of first-degree murder, the State needed to prove that Mr. Syed "caused the death" of Ms. Lee. 236 Md. App. at 281, 181 A.3d at 916. According to the intermediate appellate court, "[t]he burial of [Ms. Lee] was not an element that the State needed to prove in order to convict [Mr.] Syed." *Id.* Accordingly, "the State's theory of when, where, and how [Mr.] Syed caused [Ms. Lee's] death was critical to proving this element of the crime." *Id.* To that end, the Court of Special Appeals concluded that Ms. McClain's alibi testimony would have "directly contradicted the State's theory of when [Mr.] Syed had the opportunity and did murder [Ms. Lee]." *Id.* at 284, 181 A.3d at 917-18. The Court of Special Appeals insisted that it did not consider Ms. McClain's testimony in isolation. *Id.* at 282, 181 A.3d at 917. Nevertheless, clearly that court

- 32 -

analyzed Ms. McClain's testimony exclusively against a backdrop of what evidence was absent from the State's case with respect to the timing of Ms. Lee's death. *See id.* at 283-84, 181 A.3d at 917 (listing evidence that might have been used to establish the State's timeline of the murder but was not). In light of the absence of evidence by the State relative to the time of Ms. Lee's murder and the fact that the evidence against Mr. Syed was circumstantial, the Court of Special Appeals surmised that one piece of evidence in the form of Ms. McClain's alibi would have "altered the entire evidentiary picture." *Id.* at 284, 181 A.3d at 917-18 (citing *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069).

A reviewing court's rejection of significant circumstantial evidence in the face of a singular piece of potential evidence undermines the evidentiary value of circumstantial evidence. We have previously opined:

> Circumstantial evidence need not be such that no possible theory other than guilt can stand. . . . It is not necessary that the circumstantial evidence exclude every possibility of the defendant's innocence, or produce an absolute certainty in the minds of the jurors. . . . While it must afford the basis for an inference of guilt beyond a reasonable doubt, it is not necessary that each circumstance, standing alone, be sufficient to establish guilt, but the circumstances are to be considered collectively.

*Hebron v. State*, 331 Md. 219, 227, 627 A.2d 1029, 1033 (1993) (citations omitted) (cleaned up). A reviewing court must consider the entirety of the evidence against the post-conviction petitioner who has made a claim of ineffective assistance of counsel, rather than separately weigh the circumstantial evidence against the direct evidence. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069, 80 L.Ed.2d. 674.

In the case *sub judice*, the State's case against Mr. Syed was based, *inter alia*, on the testimony of Mr. Wilds, the cell tower location evidence, as well as the testimony of

individuals who not only corroborated Mr. Wilds's testimony but also corroborated the cell tower location evidence. Furthermore, the State proved that Mr. Syed had the motive and the opportunity to take Ms. Lee's life on January 13, 1999. As the post-conviction court noted in its first Memorandum Opinion,[16] "[a]s a motive, the State presented evidence that [Mr. Syed] was jealous and enraged at the victim's new romantic relationship with another man." The medical examiner determined that Ms. Lee had died by strangulation. The post-conviction court observed that the State established through Mr. Wilds's testimony that Mr. Syed "called Mr. Wilds from a payphone . . . at 2:36 p.m. on January 13, 1999 to request a ride." According to Mr. Wilds's testimony, Mr. Syed "opened the trunk of the victim's car, revealing the victim's lifeless body . . . told Mr. Wilds that he had strangled the victim and bragged, 'I killed someone with my bare hands.'" The post-conviction court found that the "State corroborated [Mr.] Wilds['s] testimony with [Mr. Syed's] cell phone records."

Finally, the post-conviction court observed that, "the crux of the State's case did not rest on the time of the murder. In fact, the State presented a relatively weak theory as to the time of the murder because the State relied upon inconsistent facts to support its theory." In other words, the State did not rely on the time of the victim's murder as much as it relied on the substantial circumstantial evidence that pointed to Mr. Syed's motive and his transportation and burial of the victim's body to establish his guilt. In reaching its

---

[16] The facts presented in the Statement of the Case in the post-conviction court's subsequent Memorandum Opinion ("Memorandum Opinion II") were substantially the same as in its first Memorandum Opinion, but some details in Memorandum Opinion II were abbreviated.

- 34 -

conclusion that Mr. Syed was not prejudiced by his trial counsel's failure to investigate Ms. McClain, the post-conviction court identified the State's testimonial evidence and the evidence used to corroborate that testimonial evidence, which, taken together, established Mr. Syed's motive and his opportunity to fatally strangle Ms. Lee. Ms. McClain's alibi provided evidence of Mr. Syed's whereabouts for a narrow period of time, whereas the State's case covered a much more expanded period of time on January 13, 1999. We agree with the post-conviction court, and in doing so, depart from the view of the Court of Special Appeals that the State's evidence failed to establish Mr. Syed's criminal agency.[17]

Given our task of determining whether there is a "substantial or significant" possibility that the jury's verdict would have been affected, we consider the totality of the evidence. Under the circumstances, the State's case against Respondent could not have been substantially undermined merely by the alibi testimony of Ms. McClain because of the substantial direct and circumstantial evidence pointing to Mr. Syed's guilt. *See Harrington*, 562 U.S. at 112, 131 S. Ct. at 792, 178 L.Ed.2d 624 (noting that the prejudice standard under *Strickland* means "[t]he likelihood of a different result must be substantial, not just conceivable.").

**Whether Respondent Waived Argument Regarding Cell Tower Location Evidence**

*Parties' Contentions*

In his conditional cross-petition, Mr. Syed suggests that the Court of Special Appeals drew itself into conflict with this Court's opinion in *Curtis v. State*, 284 Md. 132,

---

[17] We observe without further comment that Mr. Syed did not challenge on direct appeal the sufficiency of the evidence of the State's case against him.

395 A.2d 238 (1978), when the intermediate appellate court held that Mr. Syed had waived his ineffective assistance of counsel claim based on the allegation that his trial counsel failed to challenge cell-tower location data. Mr. Syed describes his ineffective-assistance claim variously as a separate, free-standing, factually distinct allegation of error that independently entitles him to relief. According to Mr. Syed, because the allegation of error he makes is premised on a fundamental right, the waiver provision in the post-conviction statute, as interpreted by *Curtis*, can only be waived intelligently and knowingly. Mr. Syed suggests that there is no sound reason for this Court to abandon the well-established, and frequently affirmed, precedent established by *Curtis*, which he argues, is that the right to counsel is sufficiently fundamental to require a knowing and intelligent waiver under the post-conviction statute. With respect to the holding of the Court of Special Appeals, Mr. Syed argues that the distinction that that court made between the issue of a violation of a fundamental right and the grounds supporting such a claim is a semantic distinction with no relevance. Finally, Mr. Syed points this Court to an analogous context in federal law, the federal habeas exhaustion requirement. In that context, Mr. Syed argues that ineffective assistance claims with different factual predicates must be treated separately.

The State responds to Mr. Syed's cross-petition urging this Court to affirm the Court of Special Appeals. The State points to a number of important distinctions between the facts of *Curtis* and Mr. Syed's case. The defendant in *Curtis* had never raised the issue of ineffective assistance of counsel in any prior court case.[18] Whereas in the present case, Mr.

---

[18] *Curtis v. State*, 284 Md. 132, 134, 395 A.2d 464, 466 (1978).

Syed set forth numerous grounds for finding ineffective assistance of counsel in his post-conviction petition. Additionally, the State argues that *Curtis* was decided when the General Assembly permitted a defendant to file an unlimited number of post-conviction petitions. Since *Curtis*, the Legislature has repeatedly circumscribed the number of post-conviction petitions that a person may file. In 1986, the Legislature limited the number of post-conviction filings to two, then in 1995 further limited the number of filings to one. According to the State, adopting Mr. Syed's reading of *Curtis* would effectively undermine the General Assembly's legislative intent.

*Waiver of Allegation of Error*

The waiver provision contained in the Uniform Postconviction Procedure Act ("UPPA") provides for waiver of an allegation of error when:

> (b)(1)(i) Except as provided in subparagraph (ii) of this paragraph, an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation:
> 1. before trial;
> 2. at trial;
> 3. on direct appeal, whether or not the petitioner took an appeal;
> 4. in application for leave to appeal a conviction based on a guilty plea;
> 5. in a habeas corpus or coram nobis proceeding began by the petitioner;
> 6. in a prior petition under this subtitle; or
> 7. in any other proceeding that the petitioner began.
>
> \*      \*      \*
>
> (2) When a petitioner could have made an allegation of error at a proceeding set forth in paragraph (1)(i) of this subsection but did not make an allegation of error, there is a rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation.

Md. Code Ann., Criminal Procedure Article, § 7-106 (2001, 2008 Repl. Vol., 2017 Supp.) ("Crim. Pro. Art.").

In our opinion in *Curtis*, we explored the principles of waiver as they related to the predecessor to Crim. Pro. Art., § 7-106, which was then codified as part of the Maryland Post Conviction Procedure Act, Article 27, § 645A. In 1967, Mr. Curtis was convicted of first degree murder. 284 Md. 132, 134, 395 A.2d 464, 466. Thereafter, he unsuccessfully challenged his conviction on appeal, then filed, with the assistance of counsel, a post-conviction petition. *Id*. After a hearing, the Circuit Court denied Mr. Curtis relief and he was subsequently denied an application for leave to appeal. *Id*. Six years after his first petition was denied, Mr. Curtis filed a second petition for post-conviction relief, arguing for the first time that he had been denied effective assistance of counsel at his trial, on appeal and during his post-conviction proceedings. *Id.* We summarized the ineffective assistance of counsel claims contained in his second petition for post-conviction relief as follows:

> With respect to the trial, the allegation was based on the trial attorney's failure to request a jury instruction on alibi, failure to request an instruction that voluntary intoxication could reduce first degree murder to second degree murder, failure of trial counsel to object to hearsay testimony of certain witnesses, and failure of counsel to request an instruction on the defense of "diminished capacity." The allegation that Curtis's second attorney was inadequate was grounded upon that attorney's failure at the first post conviction proceeding to raise the issue of previous counsel's ineffectiveness.

*Id*. at 134-35, 395 A.2d at 466. In granting *certiorari* in that case, we reviewed the holding of the Court of Special Appeals which concluded that "a waiver was found to exist even though, under the proffered facts . . . the defendant himself had not 'intelligently and

- 38 -

knowingly' failed to raise the question of trial counsel's alleged inadequate representation." *Id*. at 137, 395 A.2d at 468. We reversed the intermediate appellate court and explained that its holding "virtually does away with the concept of 'waiver' as an intelligent and knowing failure to raise an issue." *Id*. at 140, 395 A.2d at 468. Our conclusion was founded on a standard of whether the post-conviction petitioner "was previously 'aware of and understood the possible defense[,]'" such as in cases where the facts established that the defendant lacked comprehension. *Id*. at 140, 395 A.2d at 469. Thus, we held that in situations where "the [post-conviction] petitioner establishes that he did not in fact intelligently and knowingly fail to raise an issue previously, such issue cannot be deemed to have been waived." *Id*.

Next, in that opinion, we signaled that our holding in Mr. Curtis's case was not dispositive of all cases in which "there has been a failure to raise a matter previously." *Id*. at 141, 395 A.2d at 469. Specifically, we narrowed the applicability of the principles of waiver within the context of the post-conviction statute to "those circumstances where the waiver concept of *Johnson v. Zerbst*[19] and *Fay v. Noia*[20] was applicable." *Id*. at 149, 395 A.2d at 474. In other words, only "where the courts have required an 'intelligent and

---

[19] 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). We described *Johnson v. Zerbst*, which involved a defendant who was tried and convicted without the presence of counsel, as the "cornerstone" case involving the "waiver of certain basic constitutional rights." *Curtis v. State*, 284 Md. 132, 142-43, 395 A.2d 464, 470 (1978).

[20] 372 U.S. 391, 83 S. Ct. 822, 9 L.Ed.2d 837 (1963). *Fay v. Noia* involved a defendant who "failed to appeal a murder conviction even though it was undisputed that a coerced confession was used against him at trial." *Curtis*, 284 Md. at 144, 395 A.2d at 471. The Supreme Court reversed the lower court's finding that the defendant had waived his claim. *Id*.

knowing' standard" would we apply the waiver provision of the Maryland Post Conviction Procedure Act. *See id.* at 148, 395 A.2d at 473. We cautioned that any construction of the post-conviction statute must not "lead to an unreasonable or illogical result[,]" and that "[i]f . . . the General Assembly intended to make [the waiver provision] . . . applicable every time counsel made a tactical decision or a procedural default occurred, the result could be chaotic." *Id*. at 149, 395 A.2d at 474. In the case of Mr. Curtis, we held that because his allegations involved the inadequacy of his trial counsel's representation, which invoked the "intelligent and knowing" waiver standard of *Johnson v. Zerbst*, the issue of ineffective assistance of counsel could not be said to have been waived and we remanded for consideration of his claims. *Id*. at 150-51, 395 A.2d at 474-75.

Mr. Syed suggests that the Court of Special Appeals drew itself into conflict with the holding of *Curtis* because the intermediate appellate court concluded that Mr. Syed's claim of ineffective assistance of counsel based on counsel's failure to challenge cell-tower location evidence had been waived. According to Mr. Syed, because his claim, like Mr. Curtis's claim, invokes a fundamental right, *i.e.* the right to counsel, the claim was subject to the statutory requirement of knowing and intelligent waiver.

As the Court of Special Appeals recognized, *Curtis* was decided when the UPPA permitted an unlimited number of post-conviction petition filings. *See Syed*, 236 Md. App. at 224, 181 A.3d at 883. Since that time the Legislature has limited the number of post-conviction petitions a person may file to one. *See* Crim. Pro. Art. § 7-103(a) ("For each trial or sentence, a person may file only one petition for relief under this title."). In *Alston v. State*, we thoroughly examined the legislative history of Chapter 110 of the Acts of 1995.

425 Md. 326, 334-36, 40 A.3d 1028, 1033-35 (2012). The law, which originated as Senate Bill 340 ("S.B. 340"), modified the number of petitions a person could file. *Id.* at 335, 40 A.3d at 1034. The amendment also provided a reopening provision "in the interests of justice" which was "for the purpose of providing a safeguard for the occasional meritorious case where the convicted person had already filed one postconviction petition." *Id.* at 335, 40 A.3d at 1034 (case citations omitted); *see also* Crim. Pro. Art. § 7-104.[21] We cautioned, however, that the reopening provision "was not to authorize a second postconviction petition with all of the requirements applicable to postconviction petitions[.]" *Id.* In our discussion of the legislative materials relative to these changes to the Act, we quoted the testimony of the Governor's Chief Legislative Officer, who explained, "[c]ommon sense dictates that the defendant should include all grounds for relief in one petition. The right to file a second postconviction petition simply affords the . . . defendant an unwarranted opportunity for delay." *Id.* at 336, 40 A.3d at 1034. Additionally, the bill file contained the testimony of the chairperson of the committee that drafted S.B. 340. *Id.* The chairperson's testimony explained that, "[t]here is simply no need for routine second petitions—counsel can and should put all claims into a first petition. At the federal level, a defendant gets only one habeas corpus petition; he should not get more than one post-conviction petition." *Id.*

---

[21] Crim. Pro. Art. § 7-104 provides, "The court may reopen a postconviction proceeding that was previously concluded if the court determines that the action is in the interests of justice."

In its analysis in the present case, the Court of Special Appeals echoed these telling statements from the legislative history of the 1995 amendments to the post-conviction statute. *Syed,* 236 Md. App. at 239, 181 A.3d at 891. Based upon the legislative history, the intermediate appellate court concluded that the Legislature's intention was for a post-conviction petitioner to raise "all claims cognizable under the UPPA in his or her original petition." *Syed*, 236 Md. App. at 239, 181 A.3d at 892. We point out that previously we have observed that the purpose of the introduction of the doctrine of waiver in the UPPA "was to achieve finality in the criminal adjudicative process, without unduly interfering with a defendant's right to fully present his case before a court." *Arrington v. State*, 411 Md. 524, 548, 983 A.2d 1071, 1085 (2009). The Legislature's emphasis on bringing *all* cognizable claims in one and only one petition under the UPPA serves to underscore our holding. Mr. Syed's claim of ineffective assistance of counsel on the basis that his counsel failed to challenge the cell tower location evidence was waived because he did not raise that as a ground when advancing his ineffective assistance of counsel claim in his petition.

We reject Mr. Syed's suggestion that the holding of *Curtis* applies to his case. Unlike in *Curtis*, Mr. Syed did not fail to raise a claim of ineffective assistance of counsel in his petition for post-conviction relief. Mr. Syed advanced a claim of ineffective assistance of counsel and provided nine bases upon which that claim was premised. Those grounds were fully litigated at a hearing on October 11, 2012 and October 25, 2012. Whereas Mr. Curtis had not previously advanced his claim of ineffective assistance of counsel, thus implicating the possibility that he had waived review of a fundamental right, that is not the scenario in the present case. The Court of Special Appeals reasoned:

- 42 -

> To extend *Curtis's* requirement of a knowing and intelligent waiver from the issue of ineffective assistance of counsel to every ground that could support such claim would run counter to the legislative history and purpose of Chapter 110 of the Acts of 1995, because it would allow a petitioner to raise claims of ineffective assistance of counsel on grounds not previously raised *ad infinitum*.

*Syed*, 236 Md. App. at 239, 181 A.3d at 892. The Legislature's various amendments to the UPPA, which have curtailed the filing of successive post-convictions petitions, support this conclusion. The Legislature unmistakably intended to discourage a post-conviction petitioner from failing to raise all claims, and the grounds or allegations supporting those claims, for post-conviction relief in one petition. When Mr. Syed advanced a claim of ineffective assistance of counsel in his one post-conviction petition under the UPPA but failed to assert all grounds upon which that claim is made, he waived any allegation upon which the ineffective assistance of counsel claim could have been made but was not. Permitting otherwise would result in an end-run around the UPPA's limit to one post-conviction petition and, importantly, the Legislature's intention to achieve finality in the context of post-conviction litigation.[22]

Finally, recognizing that the case of *Bahm v. Indiana*, 794 N.E.2d 444 (Ind. Ct. App. 2003), is only persuasive authority for us, we nevertheless observe that our holding in the present case is consistent with that of our brethren jurisdiction. In response to a petition

---

[22] The Court of Special Appeals relied on a footnote in the case of *Wyche v. State*, 53 Md. App. 403, 454 A.2d 378 (1993) to conclude that the "many different grounds that may be advanced in support of a claim of a violation of a fundamental right are not themselves a fundamental right." *Syed*, 236 Md. App. at 233, 181 A.3d at 888. Given our interpretation of the legislative intent of the UPPA, we need not reach the question of the authoritative value of the footnote in *Wyche*.

for rehearing, the intermediate appellate court clarified its earlier opinion with regard to petitioner's request for post-conviction relief. In affirming its previous decision, the intermediate appellate court explained in a succinct opinion that upon remand issues that were previously waived "as free-standing arguments" may be raised as an argument supporting a claim of ineffective assistance of counsel with the caveat that "for an argument to be available in post-conviction proceedings as a reason why counsel was ineffective, the petitioner must have raised such *ground* in his petition for post-conviction relief." *Id*. at 445 (emphasis added).

## CONCLUSION

For the reasons stated herein, we agree with the conclusion of the Court of Special Appeals that Mr. Syed's trial counsel's performance was deficient under the *Strickland v. Washington* standard in failing to investigate the alibi witness. We disagree, however, with that court's conclusion that Mr. Syed was prejudiced by his trial counsel's deficiency. Finally, we agree with the holding of the intermediate appellate court that Mr. Syed waived his claim of ineffective assistance of counsel related to his trial counsel's failure to challenge cell-tower location data. Accordingly, we hold that Mr. Syed waived this claim under the waiver provision of the UPPA. Because we conclude that trial counsel's deficient performance in one aspect of her representation did not prejudice Mr. Syed within the meaning of *Strickland*, we reverse the judgment of the intermediate appellate court.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH**

- 44 -

**DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY WHICH GRANTED RESPONDENT A NEW TRIAL. COSTS TO BE PAID BY RESPONDENT.**

Circuit Court for Baltimore City
Case Nos. 199103042 through 199103046

Argued: November 29, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 24

September Term, 2018

_____

STATE OF MARYLAND

v.

ADNAN SYED

_____

Barbera, C.J.
Greene
McDonald
Watts
Hotten
Getty
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

_____

Concurring Opinion by Watts, J.

_____

Filed: March 8, 2019

Respectfully, I concur.   As the Supreme Court observed in Strickland v. Washington, 466 U.S. 668, 689 (1984), "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  (Citation omitted).

I fully agree with the Majority that, by failing to raise the contention in the petition for postconviction relief, Adnan Syed, Respondent/Cross-Petitioner, waived the contention that he received ineffective assistance of trial counsel with regard to his trial counsel's cross-examination of the wireless network expert of the State, Petitioner/Cross-Respondent.  See Maj. Slip Op. at 44.  I also agree with the Majority that Syed was not prejudiced by his trial counsel's decision to refrain from contacting or calling as a witness Asia McClain, an alleged alibi witness.[1]  See Maj. Slip Op. at 44.  Accordingly, I join the Majority's decision to reverse the Court of Special Appeals's judgment and remand to that Court with instructions to reverse the Circuit Court for Baltimore City's judgment, and to remand to the circuit court with instructions to deny the petition for postconviction relief. See id. at 44-45.

I do not, however, join all of the Majority's reasoning.  Although I agree with the Majority that Syed has failed to prove that his trial counsel's performance prejudiced him, I disagree with the Majority that Syed has proven that his trial counsel's performance was

_____

[1]Although the potential alibi witness's current last name is Chapman, her last name was McClain during the events that gave rise to Syed's convictions, and she has used her former last name during the postconviction proceeding in this case.  Thus, I refer to her by her former last name.

deficient.  See id. at 44.  In my view, Syed has failed to rebut the "strong presumption that [his trial] counsel's conduct [fell] within the wide range of reasonable professional assistance[.]"  Strickland, 466 U.S. at 689 (citation omitted).

Most importantly, in light of the Majority's determination regarding the lack of prejudice, it is unnecessary for the Majority to address whether Syed has proven deficient performance, and the Majority's determination in this regard is merely *dicta*.  Thus, to the extent that the Majority implies that trial counsel is always deficient for failing to investigate or contact a potential alibi witness, these comments are *dicta* and do not constitute precedent of this Court.

To establish ineffective assistance of counsel, a defendant must prove both deficient performance and prejudice.  See id. at 687.  Where a court determines that a defendant has failed to satisfy either the performance prong or the prejudice prong, the court may end its inquiry without addressing the other prong.  See id. at 697.  As the Supreme Court instructed in Strickland, id.:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, **there is no reason for a court deciding an ineffective assistance claim** to approach the inquiry in the same order or even **to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.**  The object of an ineffectiveness claim is not to grade counsel's performance.  **If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.**

(Emphasis added).  In other words, a court may—and, under certain circumstances, "should"—dispose of a claim of ineffective assistance of counsel by addressing only the

- 2 -

prejudice prong.  Id.

In multiple cases, this Court has done exactly that, relying on the above-quoted portion of Strickland, id.  For example, in Newton v. State, 455 Md. 341, 366, 168 A.3d 1, 15 (2017), this Court concluded that a defendant's trial counsel's and appellate counsel's performances did not prejudice him, and thus did not address the performance prong.  This Court observed: "*Strickland* [] instructs that courts . . . need [not] address both prongs in every case."  Newton, 455 Md. at 356, 168 A.3d at 9 (citing two cases, including Strickland, 466 U.S. at 697).  In Gross v. State, 371 Md. 334, 355, 809 A.2d 627, 639 (2002), this Court explained: "We need not 'grade' counsel's performance in failing to object or determine whether counsel's performance was deficient, [] *Strickland*, 466 U.S. at 697, [] because[,] even if [counsel's] failure to object was deficient performance, [the defendant] was not prejudiced."  And, in Yoswick v. State, 347 Md. 228, 246, 700 A.2d 251, 259 (1997), this Court determined: "We need not address the question of whether counsel's advice constituted deficient representation because we find that [the defendant] has failed to show that he was prejudiced by [counsel's] advice."  (Citing two cases, including Strickland, 466 U.S. at 697).

Similar to Newton, Gross, and Yoswick, in this case, because the Majority concludes that Syed has failed to prove prejudice, the Majority need not address whether deficient performance was proven.  Thus, significantly, all of the Majority's comments on the performance prong are *dicta* because they are not necessary to the holding that Syed did not receive ineffective assistance of trial counsel, *i.e.*, the Majority's observations concerning trial counsel's alleged deficient performance and the need to contact the alleged

alibi witness have no precedential value.

That said, given that the Majority addresses the performance prong, I will comment on the matter as well. Contrary to the majority opinion, I would hold that it is reasonable for a defendant's trial counsel to refrain from contacting a potential alibi witness where trial counsel already knows of the potential alibi witness's version of events, and it is reasonable for a defendant's trial counsel to refrain from calling a potential alibi witness where the potential alibi witness's testimony could prejudice the defendant by contradicting the defendant's pretrial statements to law enforcement officers, contradicting the defendant's trial counsel's reasonable choice of defense strategy, and/or otherwise appearing to be a fabrication.

Where a defendant's trial counsel has sufficient information to know of a potential alibi witness's version of events, it does not constitute deficient performance for the defendant's trial counsel to refrain from contacting the potential alibi witness to confirm what trial counsel already knows. Indeed, as the Supreme Court instructed in Strickland, 466 U.S. at 691, "when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether." And, as the Supreme Court of Montana unanimously stated: "'A claim of failure to interview a witness may sound impressive in the abstract, but it cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel.'" State v. Thomas, 946 P.2d 140, 144 (Mont. 1997) (quoting United States v. Decoster, 624 F.2d 196, 209 (D.C.Cir.1976) (plurality op.)). By way of illustration, in Weaver v. State, 114 P.3d 1039, 1042, 1044

(Mont. 2005) (plurality op.), where a defendant's trial counsel received police reports and recordings of interviews "demonstrating the existence of potential alibi witnesses," a plurality of the Supreme Court of Montana concluded that the defendant's trial counsel's decision to refrain from contacting the potential alibi witnesses was reasonable because "the record demonstrate[d] that [the defendant's trial counsel] knew the possible accounts of exculpatory testimony that may have been solicited from [the] potential [alibi] witnesses."

Here, I would conclude that Syed has failed to rebut the presumption that it was reasonable for his trial counsel to refrain from contacting McClain, as Syed's trial counsel already knew McClain's version of events. The circuit court found that, before trial, Syed gave McClain's letters to his trial counsel; and, in those letters, McClain described her alleged interactions with Syed on January 13, 1999—*i.e.*, the date on which Hae Min Lee was murdered. In her March 1, 1999 letter, McClain stated in pertinent part: "I'm not sure if you remember talking to me in the library on Jan 13th, but I remembered chatting with you. . . . My boyfriend [(Derrick Banks)] and his best friend [(Gerrod Johnson)] remember seeing you there too." McClain mentioned "the Woodlawn Public Library[,]" thus making it clear that she was referring to the public library, not the school library.[2] McClain identified a timeframe in the following sentence: "I will try my best to help you account

---

[2]The Woodlawn Branch of the Baltimore County Public Library is at 1811 Woodlawn Drive. See Baltimore County Public Library, Woodlawn Branch, https://www. bcpl.info/locations/woodlawn/index.html [https://perma.cc/2G9D-62H9]. Woodlawn High School is next-door, at 1801 Woodlawn Drive. See Contact, Woodlawn High School, http://woodlawnhs.bcps.org/contact_school [https://perma.cc/S3L2-74JJ].

for some of your unwitnessed, unaccountable lost time (2:15 - 8:00; Jan 13th)." In her March 2, 1999 letter, McClain reiterated that, on January 13, 1999, she and Syed had allegedly spoken to each other in the public library.

In addition to McClain's letters, notes from Syed's defense file demonstrate that his trial counsel was aware of McClain's version of events. Undated notes from Syed's defense file state: "Asia + boy[]friend saw him in Library 2:15 - 3:15[.]" Notes from Syed's defense file dated July 13, 1999 state: "Asia McClain → saw him in the library @ 3:00[.]" Immediately below that, the following language appears: "Asia boyfriend saw him too[.]" Under these circumstances, like the defendant's trial counsel in Weaver, 114 P.3d at 1044, Syed's trial counsel "knew the possible accounts of exculpatory testimony that may have been solicited from" a potential alibi witness. There is no indication in the record—or, indeed, any allegation whatsoever—that Syed's counsel would have gained any new material information by speaking to McClain. Indeed, in his brief, Syed acknowledges that his "trial counsel knew what McClain would say[.]"

By determining that Syed's trial counsel needed to contact McClain, the Majority effectively purports to adopt a bright-line rule that a defendant's trial counsel must always contact every single potential alibi witness whom the defendant identifies before trial. Ironically, both Syed and the majority of the panel of the Court of Special Appeals have expressly denied that they have espoused such a bright-line rule—but that is essentially what the Majority has set forth. At oral argument, Syed's postconviction counsel claimed that Syed's position was not "that there's a *per se* rule that, every time there's a[ potential] alibi witness, [he or] she must be contacted." Similarly, the majority of the panel of the

- 6 -

Court of Special Appeals insisted that it did not "say, or imply, that there is a bright[-]line rule with respect to ineffective assistance of counsel claims." Syed v. State, 236 Md. App. 183, 271 n.37, 181 A.3d 860, 910 n.37 (2018) (internal quotation marks omitted). Nonetheless, the Majority states that "[a]n attorney cannot be said to be carrying out the [American Bar Association]'s requirement of due diligence without conducting a factual investigation of an alibi witness who claims to have knowledge of the defendant's whereabouts on the day of the crime in question." Maj. Slip Op. at 19. And the Majority, Maj. Slip Op. at 15, favorably quotes the following statement by the Eighth Circuit in Grooms v. Solem, 923 F.2d 88, 90 (8th Cir. 1991): "Once a defendant identifies potential alibi witnesses, it is unreasonable not to make some effort to contact them to ascertain whether their testimony would aid the defense." (Citing Lawrence v. Armontrout, 900 F.2d 127, 129 (8th Cir. 1990); Tosh v. Lockhart, 879 F.2d 412, 414 (8th Cir. 1989)).

I would decline to adopt the bright-line rule the Majority has essentially espoused. In my view, such a bright-line rule is inconsistent with the Supreme Court's mandate that, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. Strickland, id., indicates that, in determining whether a defendant's trial counsel's decision to refrain from contacting a potential alibi witness was reasonable, a court must consider the circumstance that the defendant's trial counsel already knows of the potential alibi witness's version of events—which may obviate any need for the defendant's trial counsel to contact the potential alibi witness.

Tellingly, in each of the three aforementioned Eighth Circuit cases—*i.e.*, Grooms, Lawrence, and Tosh—a defendant's trial counsel failed to contact a potential alibi witness where there was no indication that the defendant's trial counsel knew of the potential alibi witness's version of events. In Grooms, 923 F.2d at 89-90, a defendant's trial counsel did not contact a garage, and thus did not find out whether anyone who worked at the garage remembered whether the defendant's truck had been repaired there on the date of the crimes with which the defendant had been charged. In Lawrence, 900 F.2d at 128-29, at a postconviction hearing, a defendant testified that he asked his trial counsel to interview two potential alibi witnesses "who would have corroborated [the] story" of his girlfriend, who "was his main alibi witness"; the defendant's trial counsel testified that she interviewed the defendant's girlfriend and one of the other potential alibi witnesses; the defendant's trial counsel also testified that the defendant's girlfriend attempted to contact yet another potential alibi witness; and, as far as the Eighth Circuit's opinion reveals, the defendant's trial counsel did not know the versions of events of the two potential alibi witnesses whom she did not interview. In Tosh, 879 F.2d at 413-14, at trial, a defendant's girlfriend testified that, at approximately the time of the crimes with which the defendant had been charged, one of her neighbors confronted the defendant, and the neighbor's sister and father were present during the confrontation; the defendant's trial counsel did not contact the neighbor or his sister; and, as far as the Eighth Circuit's opinion reveals, the defendant's trial counsel did not know of the neighbor's or his sister's versions of events.

Given that Grooms, Lawrence, and Tosh involved defendants' trial counsel who evidently lacked information about potential alibi witnesses' versions of events, the Eighth

Circuit's edict that, "[o]nce a defendant identifies potential alibi witnesses, it is unreasonable not to make some effort to contact them to ascertain whether their testimony would aid the defense" is inapplicable here. Grooms, 923 F.2d at 90 (citing Lawrence, 900 F.2d at 129; Tosh, 879 F.2d at 414).

I am unpersuaded by Syed's postconviction counsel's contention at oral argument that, despite knowing the contents of McClain's letters, his trial counsel was required to contact McClain to ask questions such as: "Who was with you? Can they come? What was the camera?" As to the first question, Syed's trial counsel already knew who was with McClain; in her March 1, 1999 letter, McClain stated that Banks (her boyfriend) and Johnson (Banks's friend) also saw Syed in the public library. As to the second question, McClain could not have known for certain whether Banks and/or Johnson would be willing to testify on Syed's behalf. As to the third question, McClain was a high school student at the time, and thus could not have been expected to know how the public library's surveillance cameras functioned, or whether it would have been possible to retrieve any recordings from January 13, 1999. Further, at oral argument, the Special Assistant Attorney General advised that, at the second postconviction hearing, a manager who had worked at the public library testified that recordings from the public library's surveillance cameras were maintained for only a matter of days. Under these circumstances, Syed clearly failed to rebut the presumption of reasonableness concerning trial counsel not contacting McClain.

Having concluded that Syed has failed to rebut the presumption that it was reasonable for his trial counsel to refrain from contacting McClain, I would address the

issue of whether Syed has rebutted the presumption that it was reasonable for his trial counsel to refrain from calling McClain as a witness at trial.[3]

In resolving that issue, I would hold that it is reasonable for a defendant's trial counsel to refrain from calling a potential alibi witness where his or her testimony could prejudice the defendant. As the Supreme Court mandated in Strickland, 466 U.S. at 691, "when a defendant has given counsel **reason to believe that pursuing certain investigations would be fruitless or even harmful,** counsel's failure to pursue those investigations may not later be challenged as unreasonable." (Emphasis added). Although this principle from Strickland, id., pertains to trial counsel's decision as to whether to pursue an investigation, there is no reason why the principle should not apply with equal force to trial counsel's decision as to whether to call a witness. I agree with the Fourth

---

[3]In his brief, Syed contends that the majority of the panel of the Court of Special Appeals "appropriately rejected the State's explanations for why Syed's [trial] counsel *could* potentially have believed it to be unnecessary to present the alibi *at trial*" because "[t]he challenged conduct at issue was [Syed's] trial counsel's failure even to contact [McClain] *before* trial." (Emphasis in original). Syed is mistaken to the extent that he argues that this Court must exclusively analyze his trial counsel's refraining from contacting McClain, and that this Court cannot analyze his trial counsel's refraining from calling McClain as a witness. To establish ineffective assistance of counsel, Syed must prove both deficient performance and prejudice. Syed would be unable to establish prejudice if his claim of ineffective assistance of counsel was based exclusively on his trial counsel's refraining from contacting McClain. After all, it would have made no difference to the second trial if Syed's trial counsel had contacted McClain, but then refrained from calling her as a witness. Indeed, in his brief, Syed argues that his "trial counsel's failure to contact [McClain] and present her testimony to the jury" prejudiced him. Thus, it is necessary for this Court to analyze Syed's trial counsel's refraining from calling McClain as a witness.

As discussed below, I would conclude that, in light of information of which Syed's trial counsel was aware, McClain's testimony could have prejudiced Syed. That conclusion supports both Syed's trial counsel's decision to refrain from contacting McClain and her decision to refrain from calling McClain as a witness.

Circuit that "[a]n attorney's failure to present available exculpatory evidence is ordinarily deficient, unless some cogent tactical or other consideration justified it." Griffin v. Warden, Md. Corr. Adjustment Ctr., 970 F.2d 1355, 1358 (4th Cir. 1992) (citing, among other cases, Lawrence, 900 F.2d at 130, and Grooms, 923 F.2d at 90) (internal quotation mark omitted). I also agree with the Eighth Circuit that "not every failure to call a[ potential] alibi [witness] will render an attorney's performance deficient. For example, the decision not to use alibi testimony may reflect the reasonable exercise of judgment in view of the attorney's concern that the testimony would be conflicting, or otherwise unfavorable[.]" Tosh, 879 F.2d at 414 (citations omitted).

One way in which a potential alibi witness's testimony could prejudice the defendant is by contradicting the defendant's pretrial statements to law enforcement officers. For example, in Broadnax v. State, 130 So. 3d 1232, 1260, 1248-49 (Ala. Crim. App. 2013), the Court of Criminal Appeals of Alabama unanimously held that a defendant's trial counsel's performance was not deficient where the defendant's trial counsel allegedly failed to adequately investigate an alibi. In Broadnax, id. at 1237, on a certain date, sometime after 6:00 p.m., the defendant's wife and her grandson visited the defendant at his workplace. At approximately 9:00 p.m., in a town that was a ninety-minute drive away from the town where the defendant lived and worked, law enforcement officers saw blood on and near the defendant's wife's vehicle; the officers summoned paramedics, who opened the trunk and discovered the bodies of the defendant's wife and her grandson. See id. at 1237-38, 1249. At approximately 10:30 p.m., witnesses saw the defendant at his workplace. See id. at 1239. The defendant told law enforcement officers that he had last

- 11 -

seen his wife at 8:20 p.m., and that he had been at his workplace until 10:45 p.m. See id. Consistent with his pretrial statement to the officers, at trial, the defendant's theory of the case was that he was at his workplace all evening. See id. The government's theory of the case was that the defendant killed his wife at his workplace at approximately 6:30 p.m., put her body and her grandson into her vehicle, drove to the town where their bodies were found, killed his wife's grandson, and got a ride back to his workplace, to which he returned by approximately 10:30 p.m. See id. In a petition for postconviction relief, the defendant contended that his trial counsel were ineffective because they failed to discover certain potential alibi witnesses. See id. at 1248-49. At a postconviction hearing, the potential alibi witnesses testified that, at 9:00 p.m. on the date of the murders, they saw the defendant at his work-release facility. See id. at 1249. A trial court denied the petition for postconviction relief. See id. at 1268.

The Court of Criminal Appeals of Alabama unanimously affirmed. See id. The Court of Criminal Appeals concluded that the defendant had failed to prove that his trial counsel's performance was deficient, as, before trial, the defendant told both his trial counsel and law enforcement officers that, at 9:00 p.m. on the date of the murders, he had been at his workplace, not his work-release facility. See id. at 1258. The Court of Criminal Appeals observed that, at trial, the government had offered evidence that the defendant made three false pretrial statements to the officers—namely, that his work uniform (on which blood was found) had been stolen, that his wife had left his workplace at 8:20 p.m., and that he had telephoned his brother from his workplace at approximately 9:00 p.m. See id. at 1257. These three statements were demonstrably false because there had been no

report of a stolen work uniform, his wife's body had been found at approximately 9:00 p.m. in a town that was a ninety-minute drive away from the town where he lived and worked, and there was no record of a telephone call from the defendant's workplace to his brother's residence on the night of the murders. See id. The Court of Criminal Appeals explained that, in the postconviction proceeding, the defendant "argue[d], essentially, that his trial counsel should have investigated and presented evidence to the jury that [he] had lied to the police a fourth time—when he had said that he was at [his workplace] until 10:45 p.m. the night of the murders." Id. at 1257-58 (footnote omitted). The Court of Criminal Appeals stated:

> [E]ven if [the defendant's] counsel had some basis for possibly thinking that [the defendant] had lied to them and to the police[,] and may have, in fact, been at [his work-release facility] at 9:00 p.m., **given that it was clear that [the defendant] had lied to the police regarding other things, we cannot say that any decision to forgo attempting to further impugn their client's credibility by presenting additional evidence of [the defendant]'s lying to the police was unreasonable.**

Id. at 1258 (emphasis added).

Another way in which a potential alibi witness's testimony could prejudice a defendant is by contradicting the defendant's trial counsel's reasonable choice of defense strategy. For example, in Weeks v. Senkowski, 275 F. Supp. 2d 331, 341, 336 (E.D.N.Y. 2003), the United States District Court for the Eastern District of New York concluded that a defendant's trial counsel's performance was not deficient where the defendant's trial counsel did not investigate multiple potential alibi witnesses. In Weeks, id. at 335, at trial, the government offered evidence that the defendant and four accomplices broke into an apartment and murdered two children. In a habeas corpus proceeding, the defendant

- 13 -

alleged that he had provided his trial counsel with the names of seven potential alibi witnesses, whom his trial counsel failed to interview or otherwise investigate. See id. at 341. The defendant also alleged that he was drinking with the potential alibi witnesses for several hours on the date of the murders. See id.

The District Court concluded that there was "little doubt that [the defendant's] trial counsel's refusal to investigate the potential for an alibi . . . was a sound strategic choice." Id. The District Court noted that three of the seven potential alibi witnesses had been charged with the same murders as the defendant. See id. The District Court explained that the defendant's trial counsel did not need "to pursue a trial strategy in which [the] defense would be that he was with the other [defendant]s drinking in a different location; to do so would require [the defendant] to, in essence, disprove the [government]'s ironclad case against the other defendants." Id. The District Court explained, that, "[i]nstead, [the defendant's trial] counsel reasonably channeled his efforts toward suggesting to the jury that [the defendant] was not at the crime scene[,] where . . . the other defendants were" murdering the victims. Id.

Commonwealth v. Rainey, 928 A.2d 215, 234 (Pa. 2007) is an example of a case in which a potential alibi witness's testimony could have prejudiced a defendant by contradicting both the defendant's pretrial statement to law enforcement officers and the defendant's trial counsel's reasonable choice of defense strategy. In Rainey, id. at 233-34, the Supreme Court of Pennsylvania held that a defendant's trial counsel's performance was not deficient where the defendant's trial counsel did not investigate potential alibi witnesses in a murder case. In a postconviction proceeding, the defendant alleged that,

before trial, he told his trial counsel that five potential alibi witnesses would testify that, on the night of the murder, the defendant spent the entire night at their residence. See id. at 233. The defendant's trial counsel indicated that the defense strategy was to concede that the defendant had been involved with the murder, and argue that he was guilty of a lesser degree of murder than first-degree murder. See id. The trial court denied the petition for postconviction relief. See id. at 220.

The Supreme Court of Pennsylvania vacated the trial court's order, remanded for an evidentiary hearing on an issue that was unrelated to alibi witnesses, and affirmed "[i]n all other respects[.]" Id. The Supreme Court of Pennsylvania determined that there was "[a] reasonable basis for not introducing [the] purported alibi evidence[,]" as, before trial, the defendant admitted to a law enforcement officer that he had been present at the scene of the murder. See id. at 234. The Supreme Court of Pennsylvania explained that, although the government had not offered the defendant's pretrial statement during its case-in-chief, if the defendant had offered evidence of an alibi, the government likely would have offered the defendant's pretrial statement in rebuttal. See id. The Supreme Court of Pennsylvania stated that the defendant's trial "[c]ounsel was not ineffective for declining to open the door for [the defendant]'s [pretrial] statement to police." Id. The Supreme Court of Pennsylvania also noted that evidence of an alibi "would have contradicted [the] defense strategy" of conceding that the defendant had been involved with the murder, and arguing that the defendant was guilty of a lesser degree of murder than first-degree murder— "which was reasonable[,] given the testimony of" two eyewitnesses to the murder. See id. at 234, 220-21.

- 15 -

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below **an objective standard of reasonableness.**" Strickland, 466 U.S. at 687-88 (emphasis added). In other words, a court must engage in "an inquiry into the **objective reasonableness of counsel's performance, not counsel's subjective state of mind.**" Harrington v. Richter, 562 U.S. 86, 110 (2011) (citing Strickland, 466 U.S. at 688) (emphasis added). Thus, a court must "affirmatively entertain **the range of possible reasons** [that the defendant]'s counsel **may** have had for proceeding as they did[.]" Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (cleaned up) (emphasis added).

In applying an objective standard of reasonableness to claims of ineffective assistance of trial counsel, the Supreme Court has inquired into what a reasonable lawyer in the defendant's trial counsel's position could, or could not, have decided. For example, in Richter, 562 U.S. at 106, in assessing a claim of ineffective assistance of trial counsel, the Supreme Court stated: "It was at least arguable that **a reasonable attorney** could decide to forgo inquiry into the blood evidence in the circumstances here." (Emphasis added). Similarly, in Rompilla v. Beard, 545 U.S. 374, 389 (2005), in assessing a claim of ineffective assistance of trial counsel, the Supreme Court stated: "**No reasonable lawyer** would forgo examination of the file[,] thinking [that] he [or she] could do as well by asking the defendant or family relations whether they recalled anything helpful or damaging in the [] victim's testimony." (Emphasis added). Likewise, here, the question is not what Syed's trial counsel's rationale was, but rather what the rationale of a reasonable lawyer in Syed's trial counsel's position could have been.

Significantly, there is not necessarily only one answer to that question. "Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689 (citation omitted). Thus, a court's role is not to pinpoint the best decision that a reasonable lawyer in the defendant's trial counsel's position could have possibly made; instead, the court must determine whether the defendant's trial counsel's decision was "within the wide range of reasonable professional assistance[.]" Id. (emphasis added). In other words, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Richter, 562 U.S. at 105 (citing Strickland, 466 U.S. at 690).

The question is whether a reasonable lawyer in Syed's trial counsel's position could have refrained from calling McClain as a witness.[4] I would answer that question unequivocally in the affirmative, and would conclude that Syed has failed to rebut the presumption that it was reasonable for his trial counsel to refrain from calling McClain as a witness, as her testimony could have prejudiced Syed by contradicting his pretrial statements to law enforcement officers, contradicting his trial counsel's reasonable choice

---

[4]I am unpersuaded by the State's contention that, where the record is silent as to the reasons for a defendant's trial counsel's decision, the defendant cannot rebut the presumption that his or her trial counsel's decision was reasonable. Strickland and its progeny make clear that what matters is "the objective reasonableness of counsel's performance, **not counsel's subjective state of mind.**" Richter, 562 U.S. at 110 (citing Strickland, 466 U.S. at 688) (emphasis added). Thus, here, even if the record were silent as to the reasons for Syed's trial counsel's decision not to call McClain as a witness, the record's silence would make no difference to the proper analysis, which turns on whether a reasonable lawyer in Syed's trial counsel's position could have refrained from calling McClain as a witness.

- 17 -

of defense strategy, and otherwise appearing to be a fabrication. Syed's pretrial statements to law enforcement officers, and his trial counsel's reasonable choice of defense strategy, indicated that he was at track practice after school—and did not indicate, in any way, that he was at the public library after school. Additionally, there were several other obvious indications that McClain's version of events was false.

In his pretrial statements to law enforcement officers, Syed mentioned being at track practice, but did not mention a library, and he made inconsistent statements. At the second trial, Officer Scott Adcock testified that, on January 13, 1999, Syed said that he had seen Lee at school earlier that day. According to Officer Adcock, Syed also said that Lee had been supposed to give him a ride home from school, but he had gotten held up, and presumed that she had gotten tired of waiting for him and left without him. At the second trial, Detective Joseph O'Shea testified that, on January 25, 1999, Syed said that, on January 13, 1999, he had been in a class with Lee from 12:50 p.m. to 2:15 p.m. According to Detective O'Shea, Syed also said that he had not seen Lee after school because he had gone to track practice. Detective O'Shea testified that, on February 1, 1999, he asked Syed whether he had told Officer Adcock that, on January 13, 1999, Lee had been supposed to give him a ride. According to Detective O'Shea, Syed responded that that was incorrect because he had driven to school, and thus would not have needed a ride. In other words, Syed made inconsistent pretrial statements to Officer Adcock and Detective O'Shea; he told Officer Adcock that Lee had been supposed to give him a ride, but he later told Detective O'Shea that Lee had not been supposed to give him a ride.

Syed's pretrial statements to Officer Adcock and Detective O'Shea were

inconsistent not only with each other, but also with McClain's version of events. If, as McClain testified at the second postconviction hearing, shortly after school ended, Syed went to the public library and spoke to McClain, then, contrary to his pretrial statement to Officer Adcock on January 13, 1999, he neither expected a ride home from Lee after school, nor missed that ride because he got held up. Additionally, as Syed's postconviction counsel acknowledged at oral argument, McClain's version of events was inconsistent with Syed's pretrial statement to Detective O'Shea on February 1, 1999, in that Syed failed to allege that he had gone to the public library after school on January 13, 1999. Syed had every incentive to be complete while volunteering to Detective O'Shea information about his whereabouts on the date on which Lee had gone missing, given that Syed knew that he was speaking to a detective, that Lee had been missing for more than two weeks, and that he was Lee's most recent ex-boyfriend.

Syed's trial counsel would have known of his pretrial statements to Officer Adcock and Detective O'Shea before the first trial. At the time of the second trial, Maryland Rule 4-263(b)(2)(B) stated: "Upon request of the defendant, the State's Attorney shall . . . [a]s to all statements made by the defendant to a State agent that the State intends to use at . . . trial, furnish to the defendant . . . the substance of each oral statement and a copy of all reports of each oral statement[.]" In the absence of evidence to the contrary, we must presume that Syed's trial counsel and the prosecutors acted pursuant to former Maryland Rule 4-263(b)(2)(B); "[t]here is a presumption of regularity [that] normally attaches to trial court proceedings, although its applicability may sometimes depend upon the nature of the issue before the reviewing court." Harris v. State, 406 Md. 115, 122, 956 A.2d 204, 208

(2008) (citations omitted). The record extract contains no evidence that rebuts the presumptions that Syed's trial counsel made, and that the prosecutors complied with, a request for records of all of Syed's pretrial statements to law enforcement officers. Additionally, Syed's trial counsel heard Officer Scott Adcock testify at the first trial. Thus, before the second trial, Syed's trial counsel necessarily knew of his pretrial statements to Officer Adcock.

Consistent with Syed's pretrial statements to Officer Adcock and Detective O'Shea, his trial counsel chose a defense strategy of, among other things, establishing that he regularly attended track practice. The circuit court found the following facts regarding Syed's trial counsel's choice of defense strategy:

> [Syed's t]rial counsel engaged in a three[-]prong [defense] strategy at [the second] trial: (1) to prove that [Syed] and [Lee] ended their relationship amicably due to outside pressures and remained friends after the breakup, thereby challenging the State's suggested motive; (2) to show that the police hastily focused their investigation on [Syed,] and thus[] failed to pursue evidence that would have proven [his] innocence; and (3) **to undermine [Jay] Wilds's version of the events by establishing [Syed]'s habit of attending track practice after school**[5] and then reciting taraweeh prayers at the mosque during the month of Ramadan.

(Emphasis added). In short, the circuit court expressly found that Syed's trial counsel

---

[5]Although the circuit court inadvertently stated that the State's evidence indicated that Lee was murdered between 2:35 p.m. and 2:40 p.m. on January 13, 1999, in actuality, the State's evidence indicated that, on that date, Lee was murdered sometime in the twenty-one minutes between 2:15 p.m., when the school day ended, and 2:36 p.m., when, according to Syed's cell phone records and Wilds's testimony, Syed used a pay phone to telephone Wilds (who had Syed's cell phone) and asked him to come to the parking lot of the Best Buy in Woodlawn. Wilds testified that, after he arrived at the parking lot, Syed showed him Lee's body.
(Continued...)

pursued an alibi that was based on his daily routine, which included regular attendance of track practice—and did not include regular attendance of the public library.[6]

Syed's trial counsel's choice of defense strategy—*i.e.*, pursuing an alibi that was based on his daily routine—was reasonable, given that Syed's pretrial statements to Officer Adcock and Detective O'Shea did not include information about going to the public library. Additionally, Syed's statements to his trial counsel and her law clerk demonstrated that his memory of his whereabouts after school on January 13, 1999 varied over time. At the first postconviction hearing, Syed testified that he had received McClain's letters within a week of being arrested on February 28, 1999. According to Syed, McClain's letters "kind of fortified the memory that [he] had of after school" on January 13, 1999. But, Syed testified that, after his trial counsel told him that "nothing came of" McClain's letters, he told his trial counsel "that [he] didn't really have confidence that [he]'d be able to prove [that he] was somewhere else when [Lee's] murder [took] place[.]" The undated notes from Syed's defense file indicate that he told his trial counsel's law clerk that McClain and Banks (her boyfriend) saw him in a library between 2:15 p.m. and 3:15 p.m. The notes from Syed's defense file dated July 13, 1999 indicate that he told his trial counsel's law clerk that McClain and Banks saw him in a library at 3:00 p.m. In a memorandum summarizing an August 21, 1999 interview with Syed, his trial counsel's law clerk stated that Syed

---

[6]The majority of the panel of the Court of Special Appeals stated that, "in her opening statement and closing argument, [Syed's] trial counsel did not raise *any* alibi defense[.]" Syed, 236 Md. App. at 272, 181 A.3d at 910 (emphasis in original). Opening statements and closing arguments, however, are not evidence. See MPJI-Cr 3:00. As the circuit court found, during the second trial's evidentiary phase, Syed's trial counsel pursued an alibi that was based on his daily routine.

"believe[d that] he attended track practice on [January 13, 1999] because he remembers informing his coach that he had to lead prayers on Thursday."  Attached to the memorandum summarizing the August 21, 1999 meeting with Syed was a handwritten account of his recollection of his whereabouts on January 13, 1999.  In that document, Syed did not write anything about his whereabouts after school on January 13, 1999.  In sum, Syed's pretrial statements to Officer Adcock, Detective O'Shea, his trial counsel, and her law clerk demonstrate that he lacked a consistent memory of his whereabouts after school on January 13, 1999—which made it reasonable for Syed's trial counsel to focus on his daily routine rather than McClain's allegations about his whereabouts after school on that date in particular.

This conclusion is supported by Syed's post-trial statements, which demonstrate that, after the second trial, Syed could not remember his whereabouts after school on January 13, 1999.  At the first postconviction hearing, Syed testified that, after the jury found him guilty on February 25, 2000, he told Rabia Chaudry, a family friend: "I wish there was some way that I could [have] proved that I was somewhere else at [the] time" of Lee's murder.  Consistently, at the first postconviction hearing, Chaudry testified that, after the jury found him guilty, Syed stated that January 13, 1999 "was like any other day for" him, and that he did not "have any specific recollection of that day[.]"  Syed's post-trial statements constitute additional evidence that, before trial, he failed to offer his trial counsel a consistent memory of his whereabouts after school on January 13, 1999.

In stark contrast to Syed, McClain has claimed to remember his whereabouts after school on January 13, 1999.  In her March 1, 1999 letter, McClain stated that, on January

13, 1999, at or after 2:15 p.m., she, Banks (her boyfriend), and Johnson (Banks's friend) saw Syed in the public library. Similarly, at the second postconviction hearing, McClain testified that, on January 13, 1999, she encountered Syed in the public library shortly after 2:15 p.m., and spoke to him for approximately fifteen to twenty minutes; afterward, Banks and Johnson approached Syed and McClain, and she and Banks left the public library.

Because McClain's version of events contradicted Syed's pretrial statements to Officer Adcock and Detective O'Shea and his trial counsel's reasonable choice of defense strategy, far from helping Syed's case, McClain's testimony could have given the jury reason to believe that McClain's version of events was a fabrication—and, worse still, reason to believe that Syed himself had come up with the fabrication himself. Such an inference would have been disastrous to Syed's case, as "[m]any jurors regard a false alibi as an admission of guilt." Henry v. Poole, 409 F.3d 48, 65 (2d Cir. 2005) (cleaned up). In sum, although Syed essentially argues that McClain's testimony was a life preserver that could have saved him from conviction, her testimony was actually an anchor that could have sunk his case.

This case is similar to Broadnax, 130 So. 3d at 1258, and Rainey, 928 A.2d at 234, in that a potential alibi witness's testimony would have contradicted the defendant's pretrial statements to law enforcement officers. In Broadnax, 130 So. 3d at 1249, 1239, the potential alibi witnesses' testimony that they saw the defendant at his work-release facility at 9:00 p.m. on the date of the murders would have contradicted the defendant's pretrial statement to law enforcement officers that he was at his workplace until 10:45 p.m. on the date of the murders. In Rainey, 928 A.2d at 234, the potential alibi witness's

testimony would have contradicted the defendant's statement to law enforcement officers that he had been present at the scene of the murder. Similarly, here, McClain's testimony would have contradicted Syed's pretrial statements to Officer Adcock and Detective O'Shea, both in that Syed never alleged that he had been at the public library while volunteering to the officers information about his whereabouts after school on January 13, 1999, and in that he alleged that he had either been at track practice and/or had been supposed to get a ride from Lee and got held up.

This case is especially analogous to Broadnax, 130 So. 3d at 1258, in that, at trial in each case, there was evidence that the defendant had lied to law enforcement officers. In Broadnax, id. at 1257, the defendant made to law enforcement officers three demonstrably untrue statements, such as his false allegation that he had telephoned his brother from his workplace on the night of the murders. Similarly, here, Syed told Officer Adcock that Lee had been supposed to give him a ride after school on January 13, 1999; however, later, Syed told Detective O'Shea that Lee had not been supposed to give him a ride. Just like the defendant's trial counsel in Broadnax, id. at 1258, a reasonable lawyer in Syed's trial counsel's position could have decided to "forgo attempting to further impugn [his or her] client's credibility by presenting additional evidence of [Syed]'s lying to the police[.]" (Citation omitted).

This case is also similar to Weeks, 275 F. Supp. 2d at 341, and Rainey, 928 A.2d at 234, in that a potential alibi witness's testimony would have contradicted a defendant's trial counsel's reasonable choice of defense strategy. In Weeks, 275 F. Supp. 2d at 341, the potential alibi witnesses had been charged with the same murders as the defendant, and

their testimony would have contradicted the "reasonabl[e]" defense strategy of attempting to establish that the defendant was not with the potential alibi witnesses at the time of the murders. In Rainey, 928 A.2d at 234, 237, the potential alibi witnesses' testimony "would have contradicted [the] defense strategy[—]which was reasonable"—of conceding that the defendant had been involved with the murder, and arguing that he was guilty of a lesser degree of murder than first-degree murder. Similarly, here, McClain's testimony would have contradicted Syed's trial counsel's reasonable choice of defense strategy of pursuing an alibi that was based on his daily routine, which included regular attendance of track practice—and did not include regular attendance of the public library.

The record belies Syed's postconviction counsel's assertion at oral argument that McClain's version of events was consistent with Syed's trial counsel's choice of defense strategy because it would have been possible for Syed to speak to McClain in the public library, then arrive at track practice on time. McClain's version of events was inconsistent with Syed's trial counsel's choice of defense strategy because the whole point of that strategy was to convince the jury that, given that Syed had a daily routine, he likely followed it on January 13, 1999—and McClain's version of events indicates that Syed deviated from his daily routine by going to the public library. Indeed, at oral argument, Syed's postconviction counsel acknowledged that going to the public library "was not part of his regular routine." Similarly, the majority of the panel of the Court of Special Appeals noted that, if Syed had gone to the public library, he would have been "deviating from his routine[.]" Syed, 236 Md. App. at 273, 181 A.3d at 911.

Having shown that McClain's testimony could have prejudiced Syed by

contradicting his pretrial statements to Officer Adcock and Detective O'Shea and his trial counsel's reasonable choice of defense strategy, the inquiry could end at this point. In addition, however, to the indications of fabrication that were apparent at the second trial (such as Syed's failure to tell Officer Adcock or Detective O'Shea that he had been in the public library after school on January 13, 1999), Syed's trial counsel was privy to numerous other signs that McClain's version of events was false. These were signs of fabrication that could have led a reasonable lawyer in Syed's trial counsel's position to doubt the veracity of McClain's version of events, and could have prompted ethical concerns about suborning perjury by calling McClain as a witness.[7]

One sign of possible fabrication that was available to Syed's trial counsel is that, as far as the record extract reveals, outside of giving McClain's letters to his trial counsel, Syed told his defense team on only two occasions that he had been seen at a library, by merely conveying the information to his trial counsel's law clerk. The notes from Syed's defense file indicate that, on July 13, 1999 and another date, he told his trial counsel's law clerk that McClain and Banks (her boyfriend) had seen him in a library. The July 13, 1999 notes indicate that McClain and Banks had seen Syed at the library at 3:00 p.m. The undated notes from Syed's defense file state that McClain and Banks saw him in a library between 2:15 p.m. and 3:15 p.m. Given that the circuit court found that no one on Syed's defense team contacted McClain, the information on the undated notes from Syed's defense file must have come from Syed himself. In light of the importance of Syed's whereabouts

_____

[7]At the time of the second trial, Maryland Rule of Professional Conduct 3.3(a)(4) stated: "A lawyer shall not knowingly . . . offer evidence that the lawyer knows to be false."

after school on January 13, 1999, a reasonable lawyer in Syed's trial counsel's position could have expected him to mention having been seen at a library more than two times and to have discussed the matter directly with trial counsel. Moreover, the notes do not allege that Syed ever told his defense team that he was, in fact, at a library on July 13, 1999, but only that Syed alleged that others had indicated that they had seen him there.

Another sign of fabrication is that Syed's two references to the alibi during his meetings with his trial counsel's law clerk were inconsistent with each other. On July 13, 1999, Syed said that McClain and Banks had seen him at a library at 3:00 p.m. On another date, Syed said that McClain and Banks had seen him in a library between 2:15 p.m. and 3:15 p.m. A reasonable lawyer in Syed's trial counsel's position could have found it unusual that Syed pinpointed a specific time on one occasion, yet referred to a one-hour timeframe on another.

Yet another sign of fabrication is that, in stark contrast to the two references to the library in the notes from Syed's defense file, the mention of the library is conspicuously absent from memoranda in which a member of Syed's defense team summarized meetings with him on August 21, 1999, October 9, 1999, and January 15, 2000. Attached to the memorandum summarizing the August 21, 1999 meeting with Syed was a handwritten account of his recollection of his whereabouts on January 13, 1999. In that document, Syed did not write anything about his whereabouts after 2:15 p.m.—much less allege that he had gone to a library around that time. According to the memorandum summarizing the October 9, 1999 meeting with Syed, he said that he and Lee had frequently gone to the parking lot of the Best Buy in Woodlawn to engage in sexual activity—but the

memorandum does not say anything about Syed going to a library, frequently or otherwise. And, according to the memorandum summarizing the January 15, 2000 meeting with Syed, there were several "points [that] he wanted to make with regard to the first trial"—none of which involved him being at a library.

An additional sign of fabrication is that detectives' interview notes, which the prosecutors made available to Syed's trial counsel, indicated that two employees of Woodlawn High School said that Syed frequently visited the school library—as opposed to the public library, which is in a separate building next-door to Woodlawn High School. According to the employees, Syed and Lee went to the school library often, and multiple computers at the school library had internet access—which undermines Syed's testimony at the first postconviction hearing that, after school on January 13, 1999, he went to the public library to check his e-mail. Additionally, according to the memorandum summarizing the January 15, 2000 meeting, Syed challenged Wilds's testimony's implication that he killed Lee on the side of the Best Buy, as he "would not then walk all the way to the phone booth (it is a long walk[,] and [Syed] does not like walking)." Syed did not challenge Wilds's account on the ground that he had been at the public library at the time of the murder, and was not responsible for the murder.

Another sign of fabrication is that the notes from Syed's defense file do not specify which library he claimed to have visited on January 13, 1999—the school one, or the public one. Although the circuit court found that the notes from Syed's defense file dated July 13, 1999 indicated that he told his trial counsel's law clerk that McClain saw him in the public library, in actuality, the notes simply refer to "the library[.]" Similarly, the undated

notes from Syed's defense file state that McClain and Banks "saw him in Library[.]" Immediately below that, the following language appears: "Went to Library often[.]" Even assuming that this language refers to Syed, as opposed to McClain and/or Banks, the undated notes from Syed's defense file do not specify the library to which Syed claimed to go often. It is possible that—consistent with his regular practice, according to the two employees of Woodlawn High School—Syed told his trial counsel's law clerk on two occasions that he had visited the school library after school on January 13, 1999—which would have contradicted both of McClain's letters, in which she stated that she had seen him in the public library.

An additional sign of fabrication is that, outside of McClain's and Syed's statements, the record extract contains no evidence that Banks (McClain's boyfriend) and/or Johnson (Banks's friend) ever told anyone else that they had seen Syed in the public library on the afternoon of January 13, 1999. Although McClain stated in her March 1, 1999 letter that Banks and Johnson indicated that they had seen Syed in the public library, McClain did not even mention Banks or Johnson in her March 2, 1999 letter, much less repeat her allegation that they had also seen Syed. Additionally, although the notes from Syed's defense file indicated that he told his trial counsel's law clerk on two occasions that McClain and Banks had seen him at a library, the notes from Syed's defense file do not indicate that he ever said that Johnson also saw him in a library.[8]   Under these

---

[8]Neither Banks nor Johnson testified at the postconviction hearings; thus, the record is devoid of any direct evidence that Banks or Johnson remember seeing Syed in the public library after school on January 13, 1999.

circumstances, a reasonable lawyer in Syed's trial counsel's position could have been suspicious of McClain's version of events, which lacked corroboration from anyone other than Syed—who obviously had a motive to be untruthful about his whereabouts after school on January 13, 1999 and who had not been consistent in accounting for his whereabouts on that date.

A further important sign of fabrication is that, assuming that McClain actually saw Syed in the public library on January 13, 1999, in her letters, she would not have used language that indicated that her version of events was untrue. In her March 1, 1999 letter, McClain stated in pertinent part:

> I hope that you're not guilty[,] and ~~a~~ I ~~want~~ hope to death that you have nothing to do with it. If so[,] **I will try my best to help you account for some of your unwitnessed, unaccountable lost time (2:15 - 8:00; Jan 13th).** The police have not been notified <u>Yet</u> to my knowledge[. M]aybe it will give your side of the story a particle [sic] head start. **I hope that you appreciate this,** seeing as though I really would like to stay out of this whole thing.

(Bolding added) (underlining in original) (paragraph break omitted). McClain also stated: "If you were in the library for a[ ]while, tell the police[,] and I'll continue to tell what I know even louder than I am." This unusual language is indicative of an offer to provide a false alibi.

Another sign of fabrication is that, in her March 1, 1999 letter, McClain referred to the nearly-six-hour timeframe of 2:15 p.m. to 8:00 p.m. That circumstance was unusual in light of Syed's statement to his trial counsel's law clerk that McClain had seen him in a

- 30 -

library for only a fraction of that timeframe—namely, between 2:15 p.m. and 3:15 p.m.[9]

A final sign of fabrication is that detectives' notes regarding their April 9, 1999 interview of Ja'uan Gordon (a friend of Syed's) stated that Gordon said:

> ▲[10] WROTE ME A LETTER. HE CALLED YESTERDAY, BUT I
> WASN'T HOME. WROTE ▲ BACK
> **HE WROTE A LETTER TO A GIRL TO**
> **TYPE UP WITH HIS ADDRESS ON IT**
> **BUT SHE GOT IT WRONG**
>     **101 EAST EAGER STREET**
>     **ASIA?** 12TH GRADE
> I GOT ONE, JUSTIN A[D]GER GOT ONE

(Emphasis added) (capitalization in original). The detectives' notes constitute evidence that Syed wrote a letter to McClain and asked her to type it and include the address of the Baltimore Central Booking & Intake Center, and that, as a result, McClain typed the letter and put an incorrect address on it. Specifically, McClain put on her March 2, 1999 letter the address of 301 East Eager Street—which is an address that is associated with, but is not the main address of, the Baltimore Central Booking & Intake Center.[11]

The circuit court discounted the possibility that Syed wrote a letter to McClain and asked her to type it, stating:

> [T]o adopt the State's theory, the Court would have to assume that the "Asia"

---

[9]At the second postconviction hearing, McClain revealed that she learned about the timeframe of 2:15 p.m. to 8:00 p.m. from Syed's family.

[10]The black, upward-pointing triangles in the detectives' notes (▲) look similar to the uppercase Greek letter delta (Δ), which is common shorthand for a defendant. See People v. Jones, 930 N.Y.S.2d 176 n.2 (Sup. Ct. 2011). Thus, it is clear that, when the detectives used a triangle, they were referring to Syed.

[11]The Baltimore Central Booking & Intake Center's main address is 300 East Madison Street. See Department of Public Safety & Correctional Services, Baltimore Central Booking & Intake Center, https://www.dpscs.state.md.us/locations/bcbic.shtml [https://perma.cc/7VSP-MBJ7].

[who is] referenced by Gordon is McClain[,] as opposed to another individual who shares the same name. [The detectives'] notes are unclear as to the identity of this "letter"; Gordon could be referencing [McClain's] March 2, 1999 letter[,] or another letter altogether. With respect to the "wrong address," the Court is left to speculate whether "101 East Eager Street" is the correct or wrong address[,] given the lack of context in [the detectives'] notes.

Yet, McClain is the only person who is ever mentioned throughout the entire record extract whose first name or last name is "Asia." Given that circumstance, it is extremely unlikely that Gordon was referring to someone other than McClain when he mentioned "Asia." Additionally, the record extract is devoid of any letters to Syed other than McClain's letters to him, which undermines the circuit court's theory that Gordon might have been referring to "another letter altogether."

Significantly, the circuit court's reasoning is not entitled to deference. In reviewing a trial court's determination as to whether a defendant received ineffective assistance of counsel, an appellate court reviews for clear error the trial court's findings of fact, and reviews without deference the trial court's conclusions of law. As Judge Adkins wrote for this Court in Newton, 455 Md. at 351-52, 168 A.3d at 7:

> The review of a postconviction court's findings regarding ineffective assistance of counsel is a mixed question of law and fact. Because we are not finders of fact, we defer to the factual findings of the postconviction court unless clearly erroneous. But we review the court's legal conclusion regarding whether the defendant's Sixth Amendment rights were violated without deference. We re-weigh the facts in light of the law to determine whether a constitutional violation has occurred.

(Cleaned up). Accordingly, here, this Court reviews without deference the circuit court's conclusions of law, such as its conclusion that Syed's trial counsel's performance was deficient. In other words, this Court gives no weight to the circuit court's determination

- 32 -

that Syed had proven deficient performance, and the reasoning underlying that determination. This standard of review is especially appropriate in light of the circumstance that the circuit court judge who presided over both postconviction hearings was not the circuit court judge who presided over the second trial; in other words, the circuit court judge whose decision we are reviewing was not in a better position than this Court is to determine whether Syed's trial counsel's performance was deficient.

I am unpersuaded by Syed's reliance on Grooms, 923 F.2d at 90-91, Lawrence, 900 F.2d at 129-30, Montgomery v. Peterson, 846 F.2d 407, 409-11 (7th Cir. 1988), Griffin, 970 F.2d at 1355-56, Bryant v. Scott, 28 F.3d 1411, 1419 (5th Cir. 1994), and Towns v. Smith, 395 F.3d 251, 259 (6th Cir. 2005), in which Courts concluded that defendants' trial counsel were deficient for failure to contact, investigate, and/or call potential alibi witnesses. In none of those cases was there any indication that a potential alibi witness's testimony could have prejudiced the defendant. By contrast, here, McClain's testimony could have prejudiced Syed by contradicting his pretrial statements to Officer Adcock and Detective O'Shea, contradicting his trial counsel's reasonable choice of defense strategy, and otherwise appearing to be a fabrication.

Syed's trial counsel was not required to call McClain as a witness just because there was a chance, however slight, that the jury would have viewed her testimony as exculpatory. No reasonable criminal defense lawyer would advocate that, in every case, the defense should, to use a colloquialism, "throw everything at the wall to see what sticks." Instead, a reasonable criminal defense lawyer should evaluate each piece of allegedly exculpatory evidence to determine whether it would, in fact, help the defendant. Where,

- 33 -

as here, the evidence could prejudice the defendant, it is reasonable for the defendant's trial counsel to exercise caution by refraining from pursuing the evidence.

It might be tempting to reason that, given that the jury found Syed guilty, his trial counsel might as well have contacted McClain and called her as a witness, as doing so could not have resulted in a worse outcome for Syed. Such reasoning, however, would fly in the face of the Supreme Court's jurisprudence regarding ineffective assistance of counsel. By definition, a defendant who asserts ineffective assistance of counsel has been found guilty. See Strickland, 466 U.S. at 689. In assessing a claim of ineffective assistance of counsel, a court must make "every effort [] to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. Here, the question is whether, in light of the information that was available to Syed's trial counsel before the second trial, a reasonable lawyer in her position could have refrained from calling McClain as a witness. In my view, the answer is a resounding "yes."

In conclusion, I completely agree with Judge Graeff that "a review of the record as a whole indicates possible reasons why [Syed's] trial counsel reasonably could have concluded that pursuing [] McClain's purported alibi, which was known to [Syed's] trial counsel, could have been more harmful than helpful to Syed's defense." Syed, 236 Md. App. at 297, 181 A.3d at 925 (Graeff, J., dissenting).

For the above reasons, respectfully, I concur.

Circuit Court for Baltimore City
Case Nos. 199103042 through 199103046
Argued: November 29, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 24

September Term, 2018

———————————————————

STATE OF MARYLAND

v.

ADNAN SYED

———————————————————

Barbera, C.J.,
Greene,
McDonald,
Watts,
Hotten,
Getty,
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

———————————————————

Concurring/Dissenting Opinion by Hotten,
J., which Barbera, C.J. and Adkins, J. join.

———————————————————

Filed: March 8, 2019

I respectfully concur in part and dissent in part from the majority opinion. I agree with the majority's conclusion that Mr. Syed's trial counsel's failure to investigate Ms. McClain as a potential alibi witness constituted deficient performance under *Strickland v. Washington*. However, unlike the majority, I am persuaded that this deficiency was prejudicial against Mr. Syed and his defense. For these reasons, I would affirm the Court of Special Appeals.[1]

### *Trial Counsel's Failure to Investigate an Alibi Witness was Deficient*

The Supreme Court of the United States outlined a two-prong test for determining whether a criminal defendant has received ineffective assistance of counsel in violation of the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). The defendant must first prove that trial counsel's performance was deficient. *Id.* at 687, 104 S. Ct. at 2064. If established, the defendant must then demonstrate that they were prejudiced by trial counsel's deficiency. *Id.* The majority accurately observes that Mr. Syed's trial counsel was under a duty to investigate the circumstances of the case, and explore any viable defenses on behalf of her client. The scope of this duty to investigate extended to trial counsel's investigation into alibi witnesses and alibi defenses for Mr. Syed.

---

[1] I also concur with the majority's conclusion that Mr. Syed waived his right to bring an ineffective assistance of counsel claim based on his trial counsel's failure to challenge the cell-tower location data, because this ground was not raised in Mr. Syed's petition for post-conviction relief. I would therefore affirm the Court of Special Appeals on this issue as well.

The majority references a list of decisions in which a trial counsel's failure to investigate a potential alibi witness constituted a deficiency under *Strickland*. Majority Slip Op. at 13-17; *see In re Parris W.*, 363 Md. 717, 770 A.2d 202 (2000) (concluding that trial counsel's failure to subpoena corroborating alibi witnesses for the correct trial date constituted a deficiency); *Griffin v. Warden, Maryland Correctional Adjustment Center*, 970 F.2d 1355 (4th Cir. 1992) (concluding that even though trial counsel was transferred to the case five months prior to trial, his failure to investigate five potential alibi witnesses constituted a deficiency); *Grooms v. Solem*, 923 F.2d 88 (1991) (concluding that trial counsel's failure to investigate and corroborate an alibi witness that had been brought his attention prior to, and on the day of, the trial, constituted a deficiency); *Montgomery v. Petersen*, 846 F.2d 407 (1988) (concluding that trial counsel's decision to offer alibi testimony in the defendant's burglary case in one jurisdiction, but not for a second burglary charge allegedly occurring on the same day in another jurisdiction, constituted a deficiency).

Mr. Syed's trial counsel's actions are indistinguishable from these cases. Mr. Syed informed trial counsel that he saw Ms. McClain at the public library around 3:00PM on the date of Ms. Lee's death. Mr. Syed's trial counsel also received two letters from Ms. McClain, offering herself as a witness who would testify that she saw Mr. Syed at the public library. Given Mr. Syed's trial counsel's undisputed knowledge of Ms. McClain as a potential alibi witness, I agree with the majority that trial counsel's failure to act, "falls

2

short of the tenets of a criminal defense attorney's minimum duty to investigate the circumstances and facts of the case." Majority Slip Op. at 18.

***Trial Counsel's Deficiency Prejudiced Mr. Syed***

I respectfully diverge from the majority's conclusion that Mr. Syed suffered no prejudicial effect regarding trial counsel's deficient performance within the context of *Strickland*. I would hold, as did the majority of the Court of Special Appeals panel, that counsel's deficient performance did, in fact, prejudice Mr. Syed's defense. After determining that trial counsel's failure to investigate Ms. McClain as an alibi witness was deficient, the majority nonetheless concludes that this failure did not prejudice Mr. Syed. The majority explains that "the State's case against [Mr. Syed] could not have been substantially undermined merely by the alibi testimony of Ms. McClain because of the substantial direct and circumstantial evidence pointing to Mr. Syed's guilt." Majority Slip Op. at 35.

Under the prejudice prong of *Strickland*, a reviewing court must determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Id.* This Court has further interpreted the "reasonable probability" standard to mean that there existed "a substantial or significant possibility that the verdict of the trier of fact would have been affected[.]" *Bowers v. State*, 320 Md. 416, 426, 578 A.2d 734, 739 (1990). While the *Strickland* standard for proving prejudice is undeniably high, and

decidedly deferential to trial counsel's performance, it clearly requires the showing of merely "a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068.

The State offered a significant amount of evidence regarding Mr. Syed's whereabouts and actions on the evening of January 13, 1999, beginning after the time in which the State argued Ms. Lee had been killed. The State posited that Ms. Lee was killed between 2:15PM and 2:35PM that afternoon, a contention that Mr. Syed did not, and does not, refute. The State's evidence included testimony that Mr. Syed's handprint was found on Ms. Lee's car, evidence putting him in the vicinity of Ms. Lee's body, evidence of Mr. Syed's involvement in disposing Ms. Lee's body, and motive and opportunity to kill Ms. Lee. Of particular importance, the State offered no direct evidence regarding Mr. Syed's whereabouts during the time of Ms. Lee's death. This evidence submitted by the State, albeit extensive, was circumstantial. The post-conviction court even observed that the crux of the State's argument was that Mr. Syed buried Ms. Lee in the park at approximately 7:00PM on January 13, 1999, roughly four and a half hours after the State's proposed time of death.

In his defense, Mr. Syed offered testimony from a number of witnesses to establish a timeline of Mr. Syed's daily schedule and habit. This included Mr. Syed's practice of attending track practice from approximately 4:00PM to 5:30PM or 6:00PM, followed by attending services at his mosque in the evening. The evidence offered by Mr. Syed similarly does not address his whereabouts during the crucial time of Ms. Lee's death that

4

day. The lack of evidence offered establishing Mr. Syed's location between 2:15PM and 2:35PM is precisely why Ms. McClain's alibi is so significant to the present case. Ms. McClain offered to testify, and offered multiple corresponding affidavits, that she and her boyfriend at the time saw and spoke with Mr. Syed at the Woodlawn Public Library at the time the State contends that Mr. Syed killed Ms. Lee. Not only does Ms. McClain's alibi address the most integral period of time in the case, it presents direct, not merely circumstantial, evidence of Mr. Syed's whereabouts during that time. In so far as I could determine, no other evidence was offered by the State that would have refuted Ms. McClain's testimony and affidavits.

In *Griffin v. Warden, Maryland Correctional Adjustment Center*, the Fourth Circuit determined that an attorney's failure to investigate an alibi witness was both deficient and prejudicial to the defendant's case. 970 F.2d 1355, 1358 (4th Cir. 1992). The Fourth Circuit reasoned that "[e]yewitness identification evidence, uncorroborated by a fingerprint, gun, confession, or coconspirator testimony, is a thin thread to shackle a man for forty years." *Id.* at 1359. In the present case, the State offered no eyewitness testimony, or any other evidence for that matter, putting Mr. Syed with Ms. Lee during the time of her death, much less any direct evidence that Mr. Syed caused the death of Ms. Lee. Ms. McClain's alibi was direct, uncontroverted evidence that Mr. Syed was elsewhere at the time of Ms. Lee's death. Mr. Syed does not have to definitively rebut his criminal agency, he merely has to establish that there is a reasonable probability that the result would have been different. *See id.* at 1359 (commenting that the state court incorrectly posited that the

5

alibi evidence "did not affirmatively demonstrate that [Griffin] was at home when the crime was committed[]"). In my view, there exists a reasonable probability that had this alibi defense been offered, at least one juror, if not more jurors, would have had a reasonable doubt of Mr. Syed's guilt.

In concluding that Mr. Syed did not reach this reasonable probability threshold, the majority points out that if Ms. McClain's testimony was offered and believed by the jury, the jury could still conclude that Mr. Syed killed Ms. Lee, but at a different time. In fact, the State made the same argument, attempting to establish before the post-conviction court a new timeline in which Ms. Lee died after 2:45PM rather than between 2:15PM and 2:35PM. However, "[t]he post-conviction court concluded that '[b]ased on the facts and arguments reflected in the record, the [c]ourt finds that *the State committed to the 2:36 p.m. timeline and thus, the [c]ourt will not accept the newly established timeline*." *Syed v. State*, 236 Md. App. 183, 281, 181 A.3d 860, 916 (2018) (emphasis in original). This original timeline was undisputed by Mr. Syed during trial, and throughout his post-conviction proceedings. The post-conviction court was correct in declining to adopt this new timeline. The majority's argument that Mr. Syed could have killed Ms. Lee at another time blatantly conflicts with the post-conviction court's holding. I would not disturb the post-conviction court's ruling on this issue. The possibility that Ms. Lee was killed at a different time was not offered before the judge and jury during trial. Accordingly, I would not adopt the unsubstantiated opinion that the jury could create and believe a timeline other than the original one posited to them at trial. *See Strickland*, 466 U.S. at 695, 104 S.Ct. at 2052

6

(stating that a court must analyze "the totality of the evidence *before the judge or jury*[]") (emphasis added).

The majority, echoing the argument advanced by the State during the post-conviction proceeding, declared that Ms. McClain's alibi is just a single piece of evidence that does not satisfactorily challenge the substantial amount of evidence presented by the State. To my knowledge, this Court has never held within the *Strickland* context, that a criminal defendant must offer demonstrative evidence to prove that there is a reasonable probability that the verdict would have been affected. There is no dispute that the State offered a significant amount of evidence regarding Mr. Syed's involvement in Ms. Lee's burial, and that such evidence "did create an inference that he committed her murder." 236 Md. App. at 282, 181 A.3d at 916. However,

> [t]he burial of [Ms. Lee] was not an element that the State needed to prove in order to convict [Mr.] Syed. Instead, the State had to establish that [Mr.] Syed "caused the death" of [Ms. Lee], and the State's theory of when, where, and how [Mr.] Syed caused [Ms. Lee's] death was critical to proving this element of the crime.

*Id.* at 281, 181 A.3d at 916.

A jury is advised during jury instructions that the law does not distinguish between the weight to be given to direct or circumstantial evidence and that the jury must weigh all of the evidence presented in reaching its verdict. Even though this Court has acknowledged "that there is no difference between direct and circumstantial evidence[,]" it does not automatically follow that one significant piece of direct evidence cannot sufficiently contradict many pieces of circumstantial evidence, so as to affect the jury's verdict.

7

*Hebron v. State*, 331 Md. 219, 226, 627 A.2d 1029, 1032 (1993). "But as with many criminal cases of a circumstantial nature, [the present case] had its flaws." 236 Md. App at 283, 181 A.3d at 917. The State offered no direct evidence establishing that Mr. Syed "caused the death" of Ms. Lee, and its case was largely dependent on witness testimony, which the State readily admitted was conflicting and problematic. *See id.* On the other hand, Ms. McClain's alibi testimony would have been direct evidence, from a disinterested witness, that Mr. Syed was not in the same location as Ms. Lee at the time of her death. *Id.* at 282, 181 A.3d at 916. In fact, "[t]he State's case was weakest when it came to the time it theorized that [Mr.] Syed killed [Ms. Lee]." *Id.* at 283, 181 A.3d at 917. As the Court of Special Appeals observed, "[Ms.] McClain's testimony, if believed by the trier of fact, would have made it impossible for [Mr.] Syed to have murdered [Ms. Lee]." *Id.* at 285, 181 A.3d at 918.

Ms. McClain's uncontroverted alibi witness testimony for Mr. Syed and Ms. Lee's uncontroverted time of death, as well as the State's lack of direct evidence as to Mr. Syed's whereabouts at the time of Ms. Lee's death, was sufficient to establish "a reasonable probability that, but for trial counsel's deficient performance, the result of [Mr.] Syed's trial would have been different." *Id.* at 284, 181 A.3d at 918. Because Mr. Syed has, in my opinion, proven both the deficiency and prejudice prongs of the *Strickland* test thereby establishing an ineffective assistance of counsel, I would remand the case for a new trial.

For these reasons, I respectfully concur in part and dissent in part, and would affirm the judgment of the Court of Special Appeals.

8

Chief Judge Barbera and Judge Adkins have authorized me to state that they join in this opinion.